**UNITED STATES of America,**

v.

**Anthony PROVENZANO et al., Defendants.**

**No. 76 Cr. 580.**

United States District Court, S. D. New York.

Oct. 29, 1976.

Robert B. Fiske, Jr., U. S. Atty., S.D. N.Y., New York City, for the U. S. (William I. Aronwald, New York City, of counsel).

Maurice Edelbaum, New York City, for Anthony Provenzano (Henry J. Boitel, New York City, of counsel).

Frederick C. Ritger, Jr., South Orange, N.J., for Salvatore Briguglio.

Harold Konigsberg pro se (Frank A. Lopez, New York City, assisting).

Robert S. Eisenberg, Jersey City, N.J., for George Vangelakos.

## MEMORANDUM

STEWART, District Judge.

Defendants Anthony Provenzano, Salvatore Briguglio, Harold Konigsberg and George Vangelakos have been charged with violating 18 U.S.C. § 1201. The two counts of the indictment charge 1) that the defendants conspired "[f]rom on or about the 1st day of January, 1961 up to and including on or about October 1, 1961" to kidnap Anthony Castellito, then Secretary-Treasurer of Local 560 of the International Brotherhood of Teamsters, for the purpose of murdering him, and 2) that defendants kidnapped Castellito by taking him from New Jersey to New York for the purpose of murdering him "on or about June 5, 1961." This indictment was handed up by the Grand Jury on June 22, 1976.

Defendants have moved for dismissal of the indictment on the ground that it is barred by the statute of limitations.

There are two sections of the United States Code that set forth the statutes of limitation applicable to criminal offenses. The first, 18 U.S.C. § 3281 applies to "[c]apital offenses" and provides

An indictment for any offense punishable by death may be found at any time without limitation . . .

The second, 18 U.S.C. § 3282 applies to "[o]ffenses not capital" and provides

Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed.

Since the indictment in the instant case was returned some fifteen years after the alleged offenses were committed, it is time-barred unless § 3281 governs. In order for § 3281 to apply, the offense must be "capital," which traditionally has meant "punishable by death." To determine whether a violation of § 1201 may be considered capital now, we must analyse the particular transitions which the death penalty provision of the kidnap statute has gone through since 1961.

In 1961, 18 U.S.C. § 1201 read in pertinent part

(a) . . . Whoever knowingly transports in interstate or foreign commerce any person who has been unlawfully . . . kidnapped . . . and held for ransom or reward or otherwise . .

shall be punished (1) by death if the kidnapped person has not been liberated unharmed and if the verdict of the jury shall so recommend, or (2) by imprisonment for any term of years or for life, if the death penalty is not imposed.

. . . . .

and

(c) If two or more persons conspire to violate this section and one or more of such persons do any overt act to effect the object of the conspiracy, each shall be punished as provided in subsection (a).

In the instant case, the government has alleged that the kidnap victim was not "liberated unharmed" (Castellito is alleged to have been murdered). Thus in 1961, when the offenses were alleged to have taken place, they could have been punishable by death so they would have been "capital

offenses" within the meaning of 18 U.S.C. § 3281.

However, in 1968, the United States Supreme Court held that the death penalty provision of the statute was unconstitutional. In *United States v. Jackson*, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968), the Court found that because the death penalty could only be imposed "if the verdict of the jury shall so recommend," the provision placed an unconstitutional burden on the assertion of the accused's Fifth Amendment right not to plead guilty and Sixth Amendment right to demand a jury trial (Id. at 591, 88 S.Ct. at 1221). Accordingly, the Court held that the death penalty provision was "unenforceable." On October 24, 1972, the kidnap statute was amended by Congress to totally eliminate the death penalty provision. P.L. 92–539, Title II, § 201, 86 Stat. 1072. To determine, then, what statute of limitations is applicable when the alleged offense occurred in 1961 and the indictment was returned in 1976, we must decide what effect, if any, the *Jackson* ruling and the 1972 amendment have on the characterization of a violation of the kidnap statute as a "capital offense."

First, we will consider the effect of the ruling in *Jackson*. After *Jackson*, no death penalty could be imposed constitutionally under the terms of § 1201. The question is whether this rendered prosecutions under this statute "non-capital" for purposes of the statute of limitations. This specific issue has never been raised before under § 1201. However, other courts have dealt with prosecutions under § 1201 (and other statutes whose death penalty provisions had been declared unconstitutional) where they had to determine the continued applicability of other statutory provisions which prescribed particular procedures when an accused was faced with a "capital" crime. See *United States v. Massingale*, 500 F.2d 1224 (4th Cir. 1974); *United States v. Hoyt*, 451 F.2d 570 (5th Cir. 1971), *cert. den.*, 405 U.S. 995, 92 S.Ct. 1272, 31 L.Ed.2d 465 (1972); *Reed v. United States*, 432 F.2d 205 (9th Cir. 1970), *cert. den.*, 401 U.S. 957, 91 S.Ct. 986, 28 L.Ed.2d 242 (1971) [all in-

volving prosecutions under § 1201 and the question of whether 18 U.S.C. § 3432, requiring a list of witnesses and veniremen to be furnished the defendant and F.R.Crim.P. 24(b), allowing 20 peremptory challenges, were still applicable]; *United States v. Watson,* 496 F.2d 1125 (4th Cir. 1973) [prosecution under 18 U.S.C. § 1111 (murder) raising question as to applicability of 18 U.S.C. § 3005 providing two attorneys]; *United States v. McNally,* 485 F.2d 398 (8th Cir. 1973), *cert. den.,* 415 U.S. 978, 94 S.Ct. 1566, 39 L.Ed.2d 874 (1974) [prosecution under 49 U.S.C. § 1472(i) (air piracy) raising question as to applicability of Rule 24(b)]; *United States v. Crowell,* 359 F.Supp. 489 (M.D.Fla.1973) *aff'd,* 498 F.2d 324 (5th Cir. 1974) [prosecution under 18 U.S.C. § 2113(a), (b) and (e) (bank robbery) and applicability of § 3432 and Rule 24(b)]; *State v. Flood,* 263 La. 700, 269 So.2d 212 (La.1972); *State v. Holmes,* 263 La. 685, 269 So.2d 207 (La.1972) [both involving murder prosecutions under state law raising questions of the defendant's eligibility for bail and of the applicability of requirements of a unanimous jury, a bill of exceptions, sequestration of jury, etc.]; *People v. Anderson,* 6 Cal.3d 628, 100 Cal.Rptr. 152, 493 P.2d 880 (Cal.1972) [state murder prosecution and eligibility for bail]; *State v. Zarinsky,* 143 N.J.Super. 35, 362 A.2d 611 (App.Div. 1976), *app. pending* [state murder prosecution and applicability of unlimited statute of limitations].

While the courts have reached different final conclusions as to the continued applicability of the procedural statutes in these cases, they have all followed a similar process of reasoning. The analysis in *United States v. Watson, supra,* is typical. There the question was whether the holding in *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), had rendered the offense charged (murder) non-capital for the purposes of determining whether the accused still had a right to the appointment of two attorneys, allowed under 18 U.S.C. § 3005 to those faced with "capital" crimes. The Court noted that "in a very literal sense," the statute still authorized the imposition of the death penalty since

Congress had not repealed it. Further, Congress had done nothing to amend, in light of *Furman,* any of the procedural statutes which provided special rules for "capital" cases. As Congress had not yet acted, the Fourth Circuit was loathe to do so unless it were convinced that continued application of the two-attorney statute "could not conceivably serve any of the purposes that motivated Congress to enact it" (Id. at 1128). Thus, the Court looked behind the two-attorney rule to see whether the sole reason for it was the defendant's potential exposure to the death penalty, or whether Congress had other rationales relating to the complexity or grave nature of offenses punishable by death. The *Watson* court concluded that the complex nature of capital cases, as well as the gravity of the penalty, supported the two-attorney rule. Since the unconstitutionality of the death penalty in no way altered the complexity of the offense, the Court held that it was still "capital" for the purpose of applying the two-attorney rule.

Similarly, courts have looked to the purpose behind making "capital" offenses non-bailable when deciding whether a ruling that the offense could not constitutionally be punished by death meant that the offense was now bailable. On this question of purpose, the courts have split. Some have found that the gravity of the penalty was the sole reason for making the offense non-bailable (see e. g. *Flood, supra*), and others have concluded that it was the grave nature of the offense that made the offense non-bailable, and since the unconstitutionality of the death penalty had not changed this nature, the offense remained non-bailable (see e. g. *Anderson, supra*).

Thus, considering the effect of *Jackson* alone, we are instructed by previous decisions to consider the rationale behind providing an unlimited time within which a prosecution may be brought for certain offenses which are referred to by statute as "capital offenses."

The legislative history behind § 3281 consists of a Senate and a House Report (Senate Report No. 215 dated March 27, 1939

and House Report No. 1337 dated July 27, 1939). The Reports offer only one explanatory statement—a letter from the then Attorney General stating:

> Existing law . . . provides that no person shall be prosecuted for a capital offense, willful murder excepted, unless the indictment is found within 3 years after the commission of the offense.
>
> The experience of this Department has been that the time allowed by this statute is too short, especially as to the more serious offenses.
>
> I therefore recommend that, as to any offense for which the death penalty may be imposed, no statute of limitations shall apply . . .

A brief list of some of the offenses for which the death penalty could be imposed followed.

The above statement is not especially revealing of Congressional intent, since it refers only to the Justice Department's experience with the three-year limit. It does suggest that the Department had encountered problems in preparing for prosecutions of the "more serious" of the capital offenses, arguably because of their complexity. Thus we may conclude that it was something in the nature of the offenses which indicated the necessity for a longer statute of limitations. It may be suggested, in addition, that Congress may have wanted to be sure that those who had committed crimes of such a serious nature would never, by lapse of time, be able to avoid punishment.[1] The alternative reasoning would be that the gravity of the death penalty mandated an unlimited time in which prosecutions could be brought (and during which a defendant would continue to be exposed to liability). We cannot discover the logic that would support such a proposition and we reject it.

■ Thus we agree with the government that the term "capital offense" was used in § 3281 as a shorthand reference to a category of offenses of a particularly serious nature. The ruling in *Jackson* did not alter the nature of the offense. The *Jackson* court concluded that Congress believed kidnapping was so serious a crime that Congress would not want the whole statute to fall just because the death penalty provision could not constitutionally stand (390 U.S. at 590–91, 88 S.Ct. 1209). Thus the Court held that the penalty provision was severable. We might be inclined, therefore, were *Jackson* the only pertinent event, to hold that it did not transform § 1201 into a non-capital offense for purposes of the applicability of § 3281, and to rule that the prosecution here would be timely.

However, as the Fourth Circuit noted in *Watson*, a court has a different role when determining the ramifications of a judicial holding that a death penalty provision is unconstitutional, from that when Congress has taken some action on the matter. Thus in *Massingale, supra*, when the same Circuit was faced with the question of whether a defendant charged under § 1201 would be entitled to the benefits of Rule 24(b) and 18 U.S.C. § 3432, it held that the 1972 Congressional amendment to § 1201 precluded the court from engaging in any of the analysis followed in *Watson*, and clearly "removed kidnapping from the classification of a capital offense" (500 F.2d at 1224).

■ In 1972, the death penalty provision of 18 U.S.C. § 1201 was repealed and all violations of the statute were made punishable "by imprisonment for any term of years or for life."[2] We are not aware of

---

1. See discussion in *Zarinsky*, 143 N.J.Super. at 48–51, 362 A.2d 611.

2. We note in passing that initial amendments to § 1201 retained the death penalty provision, but modified it by "correcting the defect in the present provision disclosed in *United States v. Jackson*" and by authorizing "its imposition only if the victim dies as a consequence of the crime" (Letter from the Secretary of State and Attorney General contained in House Report

92–1268 and Senate Report 92–1105, *U.S. Code Congressional and Administrative News*, 92nd Congress—2d Session, Vol. 3, p. 4322 (1972)). However, the final version repealed the death penalty provision entirely. The only discussion of the reason for repeal appears in remarks made on the House floor during debate on the new bill by Rep. Richard H. Poff of Virginia, one of the bill's original sponsors. Representative Poff stated that the death penalty provi-

any steps taken by Congress to amend other provisions of Title 18 or the Federal Rules of Criminal Procedure or the statute of limitations so as to validate their continued applicability to the new § 1201. Where Congress has not acted to reconsider related statutes, we may not infer an intent to do so. Thus we agree with the Fourth Circuit in *Massingale* that Congress has now clearly removed kidnapping from the classification of "capital offenses."[3] Accordingly, the five-year statute of limitation of 18 U.S.C. § 3282 now applies to prosecutions under § 1201.

The government contends though, that even though § 3282 may apply to current prosecutions under § 1201 for violations allegedly committed since 1972, § 3281 continues to apply to the instant prosecution for a violation which allegedly occurred before 1972. This contention is based on the general saving clause 1 U.S.C. § 109 which reads:

> The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing Act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture or liability. . . .

This saving clause has been interpreted to save penalties already imposed on a defendant under the statute before it was re-

pealed, *Warden v. Marrero*, 417 U.S. 653, 94 S.Ct. 2532, 41 L.Ed.2d 383 (1974). It has also been used to preserve earlier penalties for pre-repeal violations, even though imposed after repeal and enactment of more lenient penalty provisions, *United States v. Ross*, 464 F.2d 376 (2d Cir. 1972), *cert. den.*, 410 U.S. 990, 93 S.Ct. 1507, 36 L.Ed.2d 188, *reh. den.*, 411 U.S. 977, 93 S.Ct. 2151, 36 L.Ed.2d 700 (1973); *United States v. Taylor*, 123 F.Supp. 920 (S.D.N.Y.1954), *aff'd* 227 F.2d 958 (2d Cir. 1955). In addition, it has been interpreted to sustain post-repeal prosecutions of pre-repeal violations even when the conduct involved was no longer a crime under the new law, *United States v. Reisinger*, 128 U.S. 398, 9 S.Ct. 99, 32 L.Ed. 480 (1888); *Pipefitters Local Union No. 562 v. United States*, 407 U.S. 385, 92 S.Ct. 2247, 33 L.Ed.2d 11 (1972); *contra, Hamm v. Rock Hill*, 379 U.S. 306, 85 S.Ct. 384, 13 L.Ed.2d 300 (1964) (where the Court found that the repeal substituted a right for a crime, and thus reasoned that abatement of both prior prosecutions and convictions was mandated despite § 109). None of these situations, however, is presented in the instant case. The 1972 repeal of the death penalty did not change any elements of the substantive offense of kidnapping and the defendants' alleged actions would be violations of both original and amended § 1201. No penalty imposed before repeal is sought to be enforced, and the government does not contend that § 109 should sustain the imposition of the death penalty on any of the defendants now before us.[4]

---

sion had been written out because of *Furman*. He noted, however, that

> [t]he conforming of the penalty provisions of this bill to the apparent requirements of the *Furman* decision is nothing but a stopgap handling of the death penalty question. A more lasting determination of how, and whether, the death penalty might be prescribed for the offenses covered by this bill, or for any other Federal crime is an important and complex matter in itself, and passage of this otherwise relatively noncontroversial measure should not await a permanent resolution of that issue. *Congressional Record*, Vol. 118, Part 21, p. 27116 (August 7, 1972).

Whatever may be inferred from these remarks as to the general attitude in Congress concern-

ing the death penalty, the present determination that there should be no death penalty under § 1201 is plain.

**3.** In accordance with this position, Judge Bonsal, to whom this case was assigned earlier, denied indigent defendant Harold Konigsberg's request for the appointment of two attorneys under 18 U.S.C. § 3005 (Konigsberg Memorandum in Support of Dismissal, page 7).

**4.** In light of the holdings in *Jackson* and *Furman*, such a position would be untenable, since, for the purpose of invalidating a sentence imposing the death penalty under § 1201, they would be applied retroactively. See *Reed v. United States*, 432 F.2d 205 (9th Cir. 1970), *cert. den.*, 401 U.S. 957, 91 S.Ct. 986, 28

Rather, the government is asking us to apply § 109 to save the pre-repeal version of § 1201 solely for the purposes of saving the applicability of the "capital offense" statute of limitations 18 U.S.C. § 3281.

Defendants object to this, arguing that the saving clause saves penalties, forfeitures and liabilities incurred under a repealed statute, but does not by its terms save procedures or remedies, and the courts have specifically interpreted § 109 as not saving remedies or procedures. *United States v. Obermeier,* 186 F.2d 243 (2d Cir. 1950), *cert. den.,* 340 U.S. 951, 71 S.Ct. 569, 95 L.Ed. 685 (1951); *Bridges v. United States,* 346 U.S. 209, 73 S.Ct. 1055, 97 L.Ed. 1557 (1952); see also *United States v. Ross* and *Warden v. Marrero,* both *supra.* In *Obermeier,* the Court was faced with the question of whether § 109 saved limitation statutes as to past offenses where a new, shorter statute of limitations had been enacted. Judge Frank, in a lengthy historical discussion, noted that when Congress intended to save limitation statutes, it had always enacted separate saving clauses, and that § 109 was considered by Congress to save only substantive rights and liabilities, and not procedures or remedies. Although recognizing that the labels "substance," "procedure," and "remedies" have no fixed meanings, Judge Frank found that in the context of the language of the general saving clause, the statute of limitations

. . . is considered no part of a "right" or "liability," but as affecting the "remedy" only. On that basis, it has been held that, until the expiration of the period named in such a statute, the period may validly be lengthened or shortened by a later statute, and that, where no criminal liability is involved, the legislature may revive a right barred by a former statute of limitations. In other words—except in the unusual instances where the statute creating a substantive right makes the period of limitations a part or qualification of the right itself—a

limitation statute establishes no vested substantive right or unalterable substantive liability. 186 F.2d at 254–255 (footnotes omitted).

Thus the Court there concluded that § 109 did not save the repealed statute of limitations.

This analysis was approved by the Supreme Court in *Bridges, supra,* where the Court considered whether a saving clause similar to § 109 applied to a repealed statute of limitation. There the Court concluded that the statute of limitations was beyond the scope of the saving clause, reasoning:

. . . to interpret the words "rights or liabilities" in the saving clause as including such procedural incidents as the period within which indictments may be found would overlook the practice of Congress to specify the saving of such limitations expressly when and if Congress wished them to be "saved" . . . 346 U.S. at 226, 73 S.Ct. at 1065.

In the instant case, there has been no direct repeal of any statute of limitation, but a repeal of the penalty provision of § 1201 on which the applicability of the no limit statute of limitations § 3281 was conditioned. In light of this, the government contends that it is immaterial that § 109 does not save repealed statutes of limitations. The government notes that § 109 applies when the repeal of a substantive provision of a statute might have "the effect to release or extinguish any penalty, forfeiture or liability incurred under" the old statute. The government reasons that repeal of the substantive death penalty provision of § 1201, by making § 3281 no longer applicable, will have the "effect" of releasing a liability incurred under the old statute unless the saving clause applies. Accordingly, the government concludes that § 109 should apply to treat the pre-repeal penalty language "as still remaining in force for the purpose of" sustaining the

L.Ed.2d 242 (1971); *Walker v. Georgia,* 408 U.S. 936, 92 S.Ct. 2845, 33 L.Ed.2d 754 (1972);

*Robinson v. Neil,* 409 U.S. 505, 93 S.Ct. 876, 35 L.Ed.2d 29 (1973).

current prosecution by making § 3281 applicable.

 We think the government's position basically mischaracterizes what is involved here. The clear thrust of 1 U.S.C. § 109 is to ensure that substantive penalties or liabilities incurred under a pre-repeal version of a statute not be released by the repeal. In the instant case, the repeal of § 1201's death penalty provision had no effect on the substantive elements of the offense of kidnapping and thus affected no substantive liability under the statute. It did change a major element in the penalty provision, though, and normally § 109 could be applied to save the old penalty for sentences imposed for offenses committed before repeal. However, since the pre-repeal penalty was held unconstitutional in *Jackson*, § 109 cannot save its application here.[5] Thus, the repeal has not released or extinguished any substantive penalty or liability under the old statute.

It has consistently been held that the length of time during which an individual may be exposed to liability under a statute is not part of the substantive rights or liabilities under the statute. See *Obermeier* and *Bridges*, both *supra*. Accordingly, statutes of limitation designating such periods are not considered "substantive." In this case, the direct effect of the repeal is to terminate the applicability of 18 U.S.C. § 3281, the no limit statute of limitations. Thus the "effect" of the repeal has been to extinguish a procedure and remedy previously available to the prosecution under § 1201. In light of *Bridges* and *Obermeier*, such a procedure and remedy cannot be saved by § 109, and thus § 109 does not apply in this case.[6]

In conclusion, we hold that 1 U.S.C. § 109 does not apply to 18 U.S.C. § 1201 for the purpose of preserving the applicability of 18 U.S.C. § 3281. We hold that the five-year statute of limitations 18 U.S.C. § 3282 does apply and that the instant prosecution is time-barred. Accordingly, we grant defendant's motion and dismiss the indictment in its entirety.

SO ORDERED.

---

5. This is not altered by the fact that the offenses charged here are pre-*Jackson* and *Furman*. See footnote 4, supra.

6. Even if § 109 could have saved the death penalty for pre-repeal offenses, we doubt that it could save § 3281, since this still remains a procedural statute which § 109 cannot reach.