**UNITED STATES of America**

v.

**Joseph George HELMICH.**

No. 81–61–Cr–J–B.

United States District Court,
M. D. Florida,
Jacksonville Division.

Aug. 26, 1981.

Gary L. Betz, U. S. Atty., Jacksonville, Fla., William Richard Scruggs, Atty., Crim. Div., Dept. of Justice, Washington, D. C., for plaintiff.

Peter L. Dearing, Jacksonville, Fla., for defendant.

## OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS INDICTMENT

SUSAN H. BLACK, District Judge.

The Court has for consideration defendant's Motion to Dismiss Indictment, filed on July 29, 1981. Defendant filed his Supplemental Memorandum of Law on August 14, 1981; the government filed its response on August 18, 1981. The Court heard oral argument on August 20, 1981.

Defendant's motion outlines four different points as grounds for dismissal of the instant indictment. They are: 1) that Counts II through IV are barred by the statute of limitations; 2) that Count I is violative of Wharton's Rule; 3) that Counts II through IV fail to allege the occurrence of any action within the territorial jurisdiction of the United States; and 4) that "pre-indictment delay" has violated defendant's sixth amendment right to speedy trial and his fifth amendment right to due process of law. The Court will address each of these points in turn.

### I. *Statute of Limitations*

Defendant is charged with violation of 18 U.S.C. § 794, which includes a provision that the maximum penalty for violation of that section is death.[1] The government has

---

1. The full text of 18 U.S.C. § 794 is set forth below:

(a) Whoever, with intent or reason to believe it is to be used to the injury of the United States or to the advantage of a foreign nation, communicates, delivers, or transmits, or attempts to communicate, deliver, or transmit, to any foreign government, or to any faction or party or military or naval force within a foreign country, whether recognized or unrecognized by the United States, or to any representative, officer, agent, employee, subject, or citizen thereof, either directly or indirectly, any document, writing, code book, signal book, sketch, photograph, photographic negative, blueprint,

accordingly taken the position that the statute of limitations applicable to this case appears in 18 U.S.C. § 3281. Section 3281 provides in pertinent part that "[a]n indictment for any offense punishable by death may be found at any time without limitation . . . ." Defendant maintains, however, that 18 U.S.C. § 3282 (general five-year statute of limitations for "any offense, not capital . . . ."), rather than section 3281, should apply to alleged violations of 18 U.S.C. § 794, in light of the holdings of *Furman v. State of Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972) and its progeny. *See, e. g., Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976); *United States v. Kaiser*, 545 F.2d 467 (5th Cir. 1977). *Furman* held that capital punishment imposed under a statute which grants complete and unfettered discretion to the sentencing authority constitutes cruel and unusual punishment in violation of the eighth and fourteenth amendments. Because the death penalty provision of 18 U.S.C. § 794 is, therefore, apparently unconstitutional,[2] defendant argues that section 794 is no longer an "offense punishable by death" for which an indictment "may be found at any time without limitation." If section 3281 were found inapplicable to the instant case, the governing statute of limitations would be that provided in section 3282 (five years). Because Counts II through IV of the indictment allege acts which occurred, at the latest, during 1963,[3] the instant action would be time-barred if section 3282 were held to apply.

The serious nature of the offense with which defendant has been charged provides the touchstone for the government's argument that it should be considered, for the purposes of section 3281, a "capital offense." Although the applicability of section 3281 to section 794 post *Furman* is a case of the first impression, the Court is not completely without precedent in the area of continued application of statutory provisions which prescribe particular procedures to be followed when an accused is faced with a "capital" crime. The courts which have carefully addressed this issue have followed a similar process of reasoning. They have, essentially, attempted to "look behind" the particular procedure in question in an effort to determine whether the sole reason for it was the defendant's potential exposure to the death penalty, or whether Congress had other rationales relating to the complexity or grave nature of the offenses punishable by death. *See, e. g., United States v. Kennedy*, 618 F.2d 557 (9th Cir. 1980) (special treatment of bail condi-

---

plan, map, model, note, instrument, appliance, or information relating to the national defense, shall be punished by death or by imprisonment for any term of years or for life.

(b) Whoever, in time of war, with intent that the same shall be communicated to the enemy, collects, records, publishes, or communicates, or attempts to elicit any information with respect to the movement, numbers, description, condition, or disposition of any of the Armed Forces, ships, aircraft, or war materials of the United States, or with respect to the plans or conduct, or supposed plans or conduct of any naval or military operations, or with respect to any works or measures undertaken for or connected with, or intended for the fortification or defense of any place, or any other information relating to the public defense, which might be useful to the enemy, shall be punished by death or by imprisonment for any term of years or for life.

(c) If two or more persons conspire to violate this section, and one or more of such persons do any act to effect the object of the conspiracy, each of the parties to such conspiracy shall be subject to the punishment provided for the offense which is the object of such conspiracy.

**2.** As noted by defendant in his Supplemental Memorandum, the following comments by Mr. Justice Blackmun in *Furman* are informative:

I trust the Court fully appreciates what it is doing when it decides these cases the way it does today. Not only are the capital punishment laws of 39 States and the District of Columbia struck down, but also all those provisions of the federal statutory structure that permit the death penalty apparently are voided. No longer is capital punishment possible, I suspect, for, among other crimes, treason, 18 U.S.C. § 2381; or . . . *espionage*, 18 U.S.C. § 794; . . . 408 U.S. at 411–12, 92 S.Ct. at 2815 (Blackmun, J. dissenting) (emphasis added).

**3.** Count I of the indictment is exempt from this particular challenge, i. e., that it is time-barred, inasmuch as it charges the commission of acts occurring as late as August, 1980.

tions for those charged with "capital" crimes derives from nature of offense charged and not from fact that potential penalty is death); *United States v. Shepherd*, 576 F.2d 719, 727–29 (7th Cir.), *cert. denied*, 439 U.S. 852, 99 S.Ct. 158, 58 L.Ed.2d 155 (1978) (reason for "two counsel rule" and "other procedural provisions giving defendants added rights in capital cases, is humane rather than pragmatic"; holding "two counsel rule" inapplicable after *Furman*); *United States v. Watson*, 496 F.2d 1125 (4th Cir. 1973) (reaching opposite result from that in *Shepherd*; held that the classification found in the "two counsel rule" is based not on potential punishment but on gravity of offense). In summary, courts faced with questions of this nature have attempted to conduct an inquiry into the legislative intent which impelled the enactment of procedural statutes applicable to "capital" crimes. The government, addressing its argument to this line of inquiry, has attempted to show that section 3281 was enacted to provide an unlimited time period for the return of indictments charging the commission of serious crimes. It argues, essentially, that the language "punishable by death," which appears in section 3281, should be viewed, in light of *Furman*, as a shorthand reference to a category of offenses which are particularly grave in nature.

Counsel for both defendant and the government have represented to the Court that they have conducted research in an attempt to ascertain the legislative history of section 3281 and section 794. They have further represented to the Court that their search has revealed nothing which would assist the Court in its present endeavor, that is, to determine the legislative intent which provided the impetus for enactment of section 3281. At least one other court has conducted such an inquiry with a similar result. The court in *United States v. Provenzano*, 423 F.Supp. 662 (S.D.N.Y. 1976), aff'd 556 F.2d 562 (2d Cir. 1977), was faced with the issue of continued applicability *vel non* of section 3281 to the federal kidnapping statute, 18 U.S.C. § 1201, after *United States v. Jackson*, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968), which

specifically held the death penalty provision of section 1201 unconstitutional. As stated in *Provenzano*:

The legislative history behind § 3281 consists of a Senate and a House Report (Senate Report No. 215 dated March 27, 1939 and House Report No. 1337 dated July 27, 1939). The Reports offer only one explanatory statement—a letter from the then Attorney General stating:

Existing law . . . provides that no person shall be prosecuted for a capital offense, willful murder excepted, unless the indictment is found within 3 years after the commission of the offense.

The experience of this Department has been that the time allowed by this statute is too short, especially as to the more serious offenses.

I therefore recommend that, as to any offense for which the death penalty may be imposed, no statute of limitations shall apply . . . .

423 F.Supp. at 665–66.

The Court in *Provenzano* noted that the above statement "is not especially revealing of Congressional intent, since it refers only to the Justice Department's experience with the three-year limit." *Id.* at 666. The court concluded its reasoning as follows:

It [the letter from the Attorney General] does suggest that the Department had encountered problems in preparing for prosecutions of the "more serious" of the capital offenses, arguably because of their complexity. Thus we may conclude that it was something in the nature of the offenses which indicated the necessity for a longer statute of limitations. It may be suggested, in addition, that Congress may have wanted to be sure that those who had committed crimes of such a serious nature would never, by lapse of time, be able to avoid punishment. The alternative reasoning would be that the gravity of the death penalty mandated an unlimited time in which prosecutions could be brought (and during which a defendant would continue to be exposed to liability). We cannot discover the logic

that would support such a proposition and we reject it.

Thus we agree with the government that the term "capital offense" was used in § 3281 as a shorthand reference to a category of offenses of a particularly serious nature. The ruling in *Jackson* did not alter the nature of the offense.

*Id.*

The *Provenzano* court went on to state that if *Jackson* were the only pertinent event, it would hold that section 1201 had not been transformed into a non-capital offense for purposes of the applicability of section 3281. However, the court noted that in 1972, the death penalty provision of section 1201 was repealed and all violations of the statute were made punishable "by imprisonment for any term of years or for life." *Provenzano,* 423 F.Supp. at 666. Thus, the court concluded that violation of section 1201 could no longer be considered an "offense punishable by death" for which an indictment "may be found at any time without limitation." 423 F.Supp. at 666–67.

This Court, unlike that in *Provenzano,* is not faced with a situation where Congress, after the *Furman* decision, has amended the subject statute, section 794, with a new penalty provision. Neither has it acted to amend section 3281. Where Congress has not, after the *Furman* decision, acted to amend section 3281 as it relates to section 794, this Court will not infer an intent to do so.

 The analysis in *Provenzano* and common sense suggest that the legislative intent behind section 3281 was to provide an unlimited time in which to return indictments charging commission of very serious crimes. Capital punishment has historically been reserved, under the laws of the United States, for only the most grave and serious of criminal offenses. Although there has been some variation in the number of crimes which Congress, during the course of the nation's history, has chosen to characterize as "capital," treason [4] is one offense which has been, from the time of the first Congress, so designated. *See, e. g.,* Crime Act of 1790, ch. 9, § 1, 1 Stat. 112 (1790); Act of Jan. 15, 1897, ch. 29, §§ 2 & 3, 29 Stat. 487 (1897); 18 U.S.C. § 2387 (1976).[5] Indeed, treason is one crime which is given specific mention in the body of the Constitution.[6] Thus, the very fact that Congress chose to make violation of section 794 punishable by death is indicative of the seriousness of the offense. Therefore, the Court finds that section 3281 provides the appropriate time period for which indictments charging violation of 18 U.S.C. § 794 are to be returned, and that the instant indictment was timely returned thereunder. The cases cited by defendant do not mandate a contrary result. They all relate to the continued applicability *vel non* of procedural *protections* afforded defendants charged with capital crimes post *Furman.* *United States v. Shepherd,* 576 F.2d 719 (7th Cir.), *cert. denied,* 439 U.S. 852, 99 S.Ct. 158, 58 L.Ed.2d 155 (1978) (holding "two counsel rule," 18 U.S.C. § 3005, inapplicable post *Furman*); *United States v. Kaiser,* 545 F.2d 467 (5th Cir. 1977) (holding provisions of 18 U.S.C. § 3432 and F.R.Cr.P. 24(b) inapplica-

---

4. Although defendant has been charged with violation of the Espionage Act, 18 U.S.C. § 794 (1976), espionage is a form of treason. Treason is defined as "[t]he offense of attempting by overt acts to overthrow the government of the state to which the offender owes allegiance; or of betraying the state into the hands of a foreign power." Black's Law Dictionary 1345 (5th ed. 1979). "Espionage, or spying, has reference to the crime of 'gathering, transmitting or losing' information respecting the national defense with intent or reason to believe that the information is to be used to the injury of the United States, or to the advantage of any foreign nation." *Id.* at 489, citing 18 U.S.C. § 793 (1976).

5. *See generally* Note, *Congressional Rebirth of the Death Penalty: Guiding the Jury Past Furman v. Georgia,* 68 Nw.U.L.Rev. 893 (1974).

6. U.S.Const. art. 3, § 3:

 Treason against the United States, shall consist only in levying war against them, or in adhering to their enemies, giving them aid and comfort. No person shall be convicted of treason unless on the testimony of two witnesses to the same overt act, or on confession in open court.

 The Congress shall have power to declare the punishment of treason, but no attainder of treason shall work corruption of blood, or forfeiture except during the life of the person attainted.

ble post *Furman*; these provide for "capital" defendant's access to copy of indictment, list of veniremen and government's witnesses, and for twenty peremptory challenges in capital case, respectively); *United States v. Hoyt*, 451 F.2d 570 (5th Cir. 1971), *cert. denied*, 405 U.S. 995, 92 S.Ct. 1272, 31 L.Ed.2d 465 (1972) (reaching same result as *Kaiser* in light of *Jackson*). Although *Kaiser* and *Hoyt* contain some dicta to the effect that the crimes charged therein were rendered non-capital by *Furman* and *Jackson* "for all purposes," neither of those cases were concerned with the question of continued applicability of section 3281, the issue which confronts the Court herein.

■ Defendant also claims that he should have been charged with violation of 18 U.S.C. § 798, rather than 18 U.S.C. § 794, because it is more "specific" than section 794. Section 798 is governed by the five-year statute of limitations found in 18 U.S.C. § 3282, and, therefore, if it were held to be controlling, Counts II through IV of the indictment would be time-barred. However, the Court finds that this argument is without merit. As noted by the government in its memorandum, the government has the discretion to determine what crime it will prosecute for a conviction when a given set of facts permits a choice. *Bordenkircher v. Hayes*, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978); *Minkin, v. United States*, 383 F.2d 427 (9th Cir. 1967). The Court accordingly finds that the instant indictment should not be dismissed on the basis of the first ground outlined in defendant's motion.

## II. *Wharton's Rule*

Defendant's second contention is that the conspiracy count of the indictment, Count I, should be dismissed as duplicitous of the substantive counts, II through IV, inasmuch as a conspiracy is necessarily a part of the alleged substantive violations of section 794.[7] Thus, defendant asserts that the instant indictment violates Wharton's Rule.[8]

■ The first point to note in this regard is that a conspiracy is *not* necessarily a part of a substantive violation of section 794. Conspiracy requires an *agreement* to commit an unlawful act. *Iannelli v. United States*, 420 U.S. 770, 777, 95 S.Ct. 1284, 1289–90, 43 L.Ed.2d 616 (1975). The substantive provisions of section 794, subsections (a) and (b), by their terms, do not require such an agreement.[9] Application of Wharton's Rule has traditionally been limited to offenses which require concerted criminal activity. *Iannelli*, 420 U.S. at 785, 95 S.Ct. at 1293.

■ A further reason for holding Wharton's Rule inapplicable to this case is that the rule is a judicial creation, designed as an "aid to the determination of legislative intent" when that intent cannot readily be discerned. *Iannelli*, 420 U.S. at 786, 95 S.Ct. at 1294. It applies only in the absence of a legislative intent to create two separate offenses. *United States v. Rone*, 598 F.2d 564, 569 (9th Cir. 1979), *cert. denied*, 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 780 (1980). By the enactment of subsection 794(c), Congress clearly expressed its intent to create two separate offenses. Accordingly, the Court finds that Count I of the

7. *See* Note 1, *supra*.

8. The following passage, excerpted from *United States v. Iannelli*, 420 U.S. at 773, 95 S.Ct. at 1288, is informative.

Wharton's Rule owes its name to Francis Wharton, whose treatise on criminal law identified the doctrine and its fundamental rationale:

When to the idea of an offense plurality of agents is logically necessary, conspiracy, which assumes the voluntary accession of a person to a crime of such a character that it is aggravated by a plurality of agents, cannot be maintained. ... In other words, when the law says, 'a combination between two persons to effect a particular end shall be called, if the end be effected, by a certain name,' it is not lawful for the prosecution to call it by some other name; and when the law says, such an offense—e. g., adultery—shall have a certain punishment, it is not lawful for the prosecution to evade this limitation by indicting the offense as conspiracy." 2 F. Wharton, Criminal Law § 1604, p. 1862 (12th ed. 1932).

9. Subsections (a) and (b) only require delivery or an attempt to deliver information to a foreign government.

instant indictment does not constitute a violation of Wharton's Rule. Therefore, defendant's Motion to Dismiss Indictment on the basis of the second ground raised therein will be denied.

### III. *Territorial Jurisdiction*

Defendant's third ground for urging dismissal of Counts II through IV of the instant indictment is that they fail to state the occurrence of any action within the territorial jurisdiction of the United States.

In 1961, Congress acted to repeal 18 U.S.C. § 791, which had limited application of the Espionage Act to the admiralty and maritime jurisdiction of the United States, on the high seas, and within the United States. Pub.L.No. 87–369, 75 Stat. 795 (1961). From H.R.Rep.No.452, 87th Cong., 1st Sess., *reprinted in* [1961] U.S. Code Cong. & Ad.News, p. 3250, it is clear that the legislative intent behind repeal of section 791 was to extend application of the Espionage Act to cover acts committed anywhere in the world. Congress may attach such extraterritorial effects to its laws, especially as applied to its own citizens. *Blackmer v. United States*, 284 U.S. 421, 52 S.Ct. 252, 76 L.Ed. 375 (1931). Defendant, as noted by the government, has been a citizen of the United States at all times. Therefore, his alleged actions, whether they occurred here or abroad, are subject to the laws of this nation. Accordingly, defendant's Motion to Dismiss Indictment on the basis of the third ground raised therein will be denied.

### IV. *Due Process and Speedy Trial*

Defendant's fourth and final claim has two dimensions. He claims that he has been denied his sixth amendment right to a speedy trial and his fifth amendment right to due process of law by the government's alleged "unreasonable delay" in bringing the instant indictment.

Turning first to the alleged violation of defendant's sixth amendment right to a speedy trial, it should be noted that "it is either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engage the particular protections of the speedy trial provision of the Sixth Amendment." *United States v. Marion*, 404 U.S. 307, 320, 92 S.Ct. 455, 463, 30 L.Ed.2d 468 (1971). Defendant herein is the subject of an indictment which was returned July 14, 1981. He was taken into custody on July 15, 1981. *Defendant's case has been, and will continue to be, expedited in an orderly fashion.* He cannot, therefore, establish violation of his sixth amendment right to a speedy trial.

Turning to the second dimension of defendant's final claim, defendant alleges that the government, as early as 1964, considered him the target of a criminal investigation and therefore ought to be precluded, under the due process clause of the fifth amendment, from prosecuting this cause due to "pre-indictment delay." Defendant alleges further that the seventeen-year delay will result in substantial prejudice to him in the trial of this cause. Defendant states that he will be unable to locate witnesses, "reconstruct where he was, what he was doing, etc. on any given date seventeen years ago."

The Court notes that the relevant case law is to the effect that defendant must show actual prejudice before violation of his due process rights under the fifth amendment can be found. *United States v. Lovasco*, 431 U.S. 783, 789, 97 S.Ct. 2044, 2048, 52 L.Ed.2d 752 (1977); *United States v. Marion*, 404 U.S. 307, 325–26, 92 S.Ct. 455, 466, 30 L.Ed.2d 468 (1971). Further, the Fifth Circuit has held that general allegations of loss of witnesses and failure of memories are insufficient to meet the standard set forth in *Marion*. *United States v. Medina-Arellano*, 569 F.2d 349, 352–53 (5th Cir. 1978); *United States v. McGough*, 510 F.2d 598, 603–05 (5th Cir. 1975); *United States v. Zane*, 489 F.2d 269, 270–71 (5th Cir. 1973), *cert. denied*, 416 U.S. 959, 94 S.Ct. 1975, 40 L.Ed.2d 310 (1974). Although *Marion* also held that prosecutorial delay intentionally employed as a device for disadvantaging the defense could constitute a denial of due process, 404 U.S. at 325, 92 S.Ct. at 466, there has been no showing of intentional wrongdoing on the part of the government herein.

Defendant urges, however, application of a *per se* rule, or irrebuttable presumption of prejudice, where, as here, there has been a seventeen-year pre-indictment delay. Defendant notes that the *Marion* court held that the applicable statute of limitations is the primary guarantee against the bringing of overly stale criminal charges. 404 U.S. at 322, 92 S.Ct. at 464. Defendant contends that this premise is unworkable when the offense charged is one for which there is no limitations period.

The Court is aware that all of the cases cited by the government involve periods of pre-indictment delay much shorter than that which allegedly took place herein. However, the Court is unwilling to fashion and apply a *per se* rule of prejudice. The Court can conceive of situations where application of such a rule would produce anomalous results. For example, although these facts are not alleged herein, application of a *per se* rule of prejudice could operate to preclude the bringing of charges against one who committed an act of espionage against the United States and then sought refuge in the country to which he had been supplying information. It could be that the United States government would not have sufficient evidence upon which to found an indictment and/or would be unable to locate him for a period of twenty or more years. Then, upon his return to this country, the government, upon obtaining sufficient evidence, would be precluded from pressing charges against him due to "pre-indictment delay." This illustration exemplifies the reasoning behind the Court's conviction that each case of alleged pre-indictment delay should be considered separately, on its own facts. In the instant case, although there is an alleged seventeen-year delay, defendant has made no showing of prejudice, and there has been no appearance of intentional delay or bad faith on the part of the government. For these reasons, defendant's Motion to Dismiss Indictment on the basis of the fourth and final point raised therein will be denied.

Inasmuch as the Court has found each of the points raised by defendant insufficient to justify dismissal of the indictment, it is

ORDERED that defendant's Motion to Dismiss Indictment, filed herein on July 29, 1981, will be denied.