[Crim. No. 17534. In Bank. Apr. 10, 1974.]

In re JAMES JOSEPH BOYLE III on Habeas Corpus.

[Crim. No. 17602. In Bank. Apr. 10. 1974.]

In re GENE GLASSCOCK on Habeas Corpus.

**COUNSEL**

Morgan, Wenzel, & McNicholas, William Marshall Morgan and Robert N. Harris, Jr., for Petitioners.

John H. Larson, County Counsel, Robert C. Lynch, Assistant Chief Deputy County Counsel, and Frederick R. Bennett, Deputy County Counsel, for Respondent.

Joseph P. Busch, District Attorney, Harry B. Sondheim, Donald J. Kaplan and Donald R. Wager, Deputy District Attorneys, for Real Party in Interest.

**OPINION**

**MOSK, J.**—In these consolidated cases petitioners Boyle and Glasscock seek writs of habeas corpus for the purpose of fixing bail. (Pen. Code, § 1490.) They are jointly charged, with other defendants, in a multiple-count

information filed in the Los Angeles Superior Court. Insofar as relevant to this proceeding, the information accuses petitioners of murder (count VI) and conspiracy to commit murder and other felonies (count V).

Article I, section 6, of the California Constitution declares that "All persons shall be bailable by sufficient sureties, unless for capital offenses when the proof is evident or the presumption great." In the case at bar the trial court denied petitioners' motions for bail on the ground that as to the crimes charged in counts V and VI the proof of guilt was evident or the presumption thereof great.

The determinative question, however, is whether these crimes are "capital offenses" within the meaning of article I, section 6. The constitutional provision does not itself define the term; it simply withholds in such cases a constitutional right to bail, and impliedly grants to the Legislature the power to implement that exception. Pursuant to that grant, the Legislature (1) enacted a procedural statute expressly forbidding bail in capital cases in which the proof is evident or the presumption great (Pen. Code, § 1270), and (2) delineated the class of such cases by substantive provisions imposing the death penalty for specified offenses.

Among those offenses, prior to February 18, 1972, were first degree murder (Pen. Code, §§ 187, 190) and conspiracy to commit murder (Pen. Code, §§ 182, 190). On the cited date we decided *People* v. *Anderson*, 6 Cal.3d 628 [100 Cal.Rptr. 152, 493 P.2d 880], in which we held that infliction of the death penalty violates the cruel or unusual punishments clause of the California Constitution (art. I, § 6). In order to subserve the purpose of the constitutional and statutory provisions on bail, however, we further held in footnote 45 of our decision (*id.,* at p. 657) that crimes which prior thereto had been punishable by death would continue to be offenses for which bail should be denied when the proof of guilt was evident or the presumption great.

The latter holding, however, was expressly made "subject to our future consideration of this issue in an appropriate proceeding." Subsequent events now compel that consideration. Nothing we said in footnote 45 was intended to govern a situation in which the Legislature acts to declare a new and different class of "capital offenses," yet that is the precise situation before us. Pursuant to intervening constitutional authorization (Cal. Const., art. I, § 27, adopted Nov. 7, 1972), the Legislature has enacted a statute which purports to restore capital punishment for certain crimes. (Stats. 1973, ch. 719, p. 496.) We need not and do not reach at this time the unresolved question of whether infliction of the death penalty

under the new statute would violate the cruel and unusual punishment clause of the United States Constitution as applied in *Furman* v. *Georgia* (1972) 408 U.S. 238 [33 L.Ed.2d 346, 92 S.Ct. 2726]. Inasmuch as the criminal acts charged in the present case took place before the effective date of the new statute (Jan. 1, 1974), the legislation cannot constitutionally be applied to the detriment of these petitioners. (Cf. *People* v. *Murphy* (1972) 8 Cal.3d 349, 352, fn. 2 [105 Cal.Rptr. 138, 503 P.2d 594], and authorities cited.) To the extent it has an ameliorative effect, however, they are entitled to rely upon it. (Cf. *In re Estrada* (1965) 63 Cal.2d 740 [48 Cal.Rptr. 172, 408 P.2d 948].) Such an effect is here present. In adopting the new statute the Legislature has, inter alia, again exercised its power to implement the bail provision of our Constitution by circumscribing the class of "capital offenses" referred to therein. It follows that only persons accused of crimes in that class may now be denied bail pursuant to Penal Code section 1270. Our task in the present proceeding, therefore, is to determine whether petitioners stand accused of a crime which, if it had been committed after January 1, 1974, would have fallen within that class.

The punishment for conspiracy to commit murder (count V) remains, as before, "that prescribed for murder in the first degree." (Pen. Code, § 182.) The punishment for the latter offense (count VI) is declared by new Penal Code section 190 to be death "if any one or more of the special circumstances enumerated in Section 190.2 have been charged and found to be true in the manner provided in Section 190.1." Section 190.1 makes it clear that such a "special circumstance" must be specifically charged in the accusatory pleading in order to qualify for consideration by the jury in fixing the punishment.[1]

Section 190.2 enumerates two classes of murder subject to the death penalty. The first (subd. (a)) is a murder which "was intentional and was carried out pursuant to an agreement with the defendant. 'An agreement,' as used in this subdivision, means an agreement by the person who com-

---

[1]Thus section 190.1 provides in relevant part that if a defendant has been found guilty of first degree murder "and any one or more of the special circumstances enumerated in Section 190.2 have been *charged,* there shall be further proceedings on the issue of the special circumstances *charged.* . . . The determination of the truth of any or all of the special circumstances *charged* shall be made by the trier of fact on the evidence presented. . . . The trier of fact shall make a special finding that each special circumstance *charged* is either true or not true. . . . [¶] If the trier of fact finds, as to any person convicted of any offense under Section 190 requiring further proceedings that any one or more of the special circumstances enumerated in Section 190.2 *as charged* is true, the defendant shall suffer the penalty of death, . . ." (Italics added.)

mitted the murder to accept valuable consideration for the act of murder from any person other than the victim." In the case at bar count V of the information charges petitioners with conspiring with others to commit murder, but there is no allegation of any agreement by the killer "to accept valuable consideration" for his services. In other words, whatever the purposes of the charged conspiracy may have been, it was not a killing for hire.

Subdivision (b) of section 190.2 punishes with death—provided that at least one of a number of listed "special circumstances" is found to exist—a defendant who "personally committed the act which caused the death of the victim." Here count VI of the information charges petitioners, co-defendant Michael William Elder, and a fourth codefendant with the murder of Gerald Wayne Sawyer on November 6, 1973. There is no allegation, however, that petitioners "personally committed" the act of killing Sawyer. On the contrary, it is charged that at the time of the commission of the offense codefendant Elder "used a firearm, to wit, a pistol"; and one of the overt acts in furtherance of the conspiracy alleged in count VI is that "On November 6, 1973, MICHAEL WILLIAM ELDER shot and killed Gerald Wayne Sawyer."

We conclude that petitioners are not charged with a crime which would have been a "capital offense" under the new statute. Indeed, the People do not contend to the contrary.[2] Petitioners are therefore entitled "as a matter of right" (Pen. Code, § 1271) to an order fixing bail. ▮ "The purpose of bail is to assure the defendant's attendance in court when his presence is required, whether before or after conviction. [Citations.] Bail is not a means for punishing defendants [citation] nor for protecting the public safety. Such objectives are provided for otherwise." (*In re Underwood* (1973) 9 Cal.3d 345, 348 [107 Cal.Rptr. 401, 508 P.2d 721].)

As in *Underwood,* however, other circumstances not of record may preclude petitioners' release at this time and we cannot now order their discharge on the posting of reasonable bail to be fixed by the court.

Let the writ issue ordering that, while petitioners remain in custody pending a determination of the charges against them and upon their ap-

---

[2]The People claim that if the facts of this case had arisen today petitioners would have been charged with a capital offense, to wit, murder committed in the course of a robbery. (Pen. Code, § 190.2, subd. (b)(3)(i).) But as noted above, pursuant to section 190.1 no such "special circumstance" can be considered unless it is actually charged in the accusatory pleading. Moreover, also as explained above, in a murder committed in the course of a robbery only the defendant who "personally committed the act which caused the death of the victim" (Pen. Code, § 190.2, subd. (b)) is subject to capital punishment.

plication therefor, they be afforded a hearing at which a reasonable bail be fixed, and that they be released upon the posting of such bail if they are then not subject to any other lawful restraints.

This order is final forthwith.

Wright, C. J., McComb, J., Tobriner, J., Burke, J., Sullivan, J., and Clark, J., concurred.