[No. B069950. Second Dist., Div. Three. Mar. 8, 1993.]

In re WILBERT CADELL BRIGHT on Habeas Corpus.

## COUNSEL

Wilbur F. Littlefield, Public Defender, Mark Windham and Albert J. Menaster, Deputy Public Defenders, for Petitioner.

Gil Garcetti, District Attorney, Brentford J. Ferreira and Wendy C. Forward, Deputy District Attorneys, for Respondent.

## OPINION

KLEIN, P. J.—Petitioner Wilbert Cadell Bright (Bright) seeks writ review of an order of the trial court denying Bright pretrial bail in a pending prosecution for murder with special circumstances, specifically, murder committed during the commission of a robbery. (Pen. Code, §§ 187, 190.2, subd. (a)(17)(i).)[1] Although the People do not seek the death penalty, the

---

[1]All subsequent statutory references are to the Penal Code unless otherwise specified.

trial court denied bail on the ground the case remained a capital case for the purpose of setting bail.[2]

On October 21, 1992, this court issued an order to show cause in response to Bright's application for writ of habeas corpus challenging the trial court's denial of bail.

For the reasons set out below we conclude that regardless of whether the People actually seek the death penalty, bail properly may be denied whenever the accused is charged with an offense statutorily punishable by death and the "facts are evident or the presumption [of guilt is] great." (Cal. Const., art. I, § 12, subd. (a).)

The petition for writ of habeas corpus is denied.

FACTUAL AND PROCEDURAL BACKGROUND

On May 11, 1992, the People filed an information against Bright alleging, inter alia, he had committed murder during the commission of a robbery within the meaning of section 190.2, subdivision (a)(17)(i). The allegation of this special circumstance subjected Bright either to the death penalty or to life in prison without the possibility of parole.

On September 2, 1992, the People advised the trial court they did not intend to seek the death penalty. Bright's counsel then asked the trial court to set bail on the ground Bright no longer was charged with a capital case. The trial court denied the request. It stated: "[W]hen special circumstances are filed, in the court's mind that is a capital offense because it is an offense for which the death penalty may, but need not necessarily, be imposed."

This writ followed.

---

[2]Article I, section 12 of the California Constitution provides in pertinent part: "A person shall be released on bail by sufficient sureties, except for: [¶] (a) Capital crimes when the facts are evident or the presumption great; . . ."

The relevant statutory provisions state: "A defendant charged with an offense punishable with death cannot be admitted to bail, when proof of his or her guilt is evident or the presumption thereof great." (§ 1270.5.) "If the charge is for any other offense, [the defendant] may be admitted to bail before conviction, as a matter of right." (§ 1271.)

## CONTENTS

 Bright contends the decision by the People not to seek the death penalty removes the case from the category of capital crimes. Bright asserts he thus is entitled to bail pending trial.[3]

## DISCUSSION

### 1. *Persons charged with capital offenses are not entitled to bail.*

Capital offenses when the proof is evident or the presumption great are an exception to a defendant's absolute right to pretrial bail in California. (*In re Underwood* (1973) 9 Cal.3d 345, 349-350 [107 Cal.Rptr. 401, 508 P.2d 721].) This provision has been a part of the California Constitution, in one form or another, since 1849. (1849 Cal. Const., art. I, § 7; 1879 Cal. Const., art. I, § 6.)[4]

"Originally this state had no degrees of murder and all murder was punishable by death. (Stats. 1850, ch. 99, § 21, p. 231.) Thereafter murder was divided into degrees and only murder of the first degree was punishable by death. (Stats. 1856, ch. 139, § 2, p. 219; Pen. Code (1872) § 190.)" *People* v. *Ray* (1967) 252 Cal.App.2d 932, 946 [61 Cal.Rptr. 1].)

---

[3]By letter dated October 27, 1992, Bright's counsel advised this court the matter had been rendered moot because the trial court already had set bail for Bright in the amount of $1 million. Bright asked this court to decide the issue presented nonetheless. The People opposed this request.

"While the case itself is now moot, [footnote omitted] it poses an issue of broad public interest, likely to recur, yet equally likely to evade review, and for that reason we think it appropriate that the matter be resolved." (*In re Nordin* (1983) 143 Cal.App.3d 538, 541 [192 Cal.Rptr. 38].)

[4]Article I, section 12 of the California Constitution was amended by Proposition 4 in the primary election of June 8, 1982. However, Proposition 4 did not alter existing law respecting the availability of bail for persons charged with capital offenses. It merely added two additional circumstances in which bail could be denied. (Ballot Pamp., Primary Elec. (June 8, 1982) p. 16.)

Article I, section 12, of the California Constitution as amended by Proposition 4, reads in full: [¶] "A person shall be released on bail by sufficient sureties, except for: [¶] (a) Capital crimes when the facts are evident or the presumption great; [¶] (b) Felony offenses involving acts of violence on another person when the facts are evident or the presumption great and the court finds based upon clear and convincing evidence that there is substantial likelihood the person's release would result in great bodily harm to others; or [¶] (c) Felony offenses when the facts are evident or the presumption great and the court finds based on clear and convincing evidence that the person has threatened another with great bodily harm and that there is a substantial likelihood that the person would carry out the threat if released. [¶] Excessive bail may not be required. In fixing the amount of bail, the court shall take into consideration the seriousness of the offense charged, the previous criminal record of the defendant, and the probability of his or her appearing at the trial or hearing of the case. [¶] A person may be released on his or her own recognizance in the court's discretion."

Historically, persons charged with murder were not entitled to pretrial bail if there was evident proof or a strong presumption the offense had been of the first degree. (*People* v. *Tinder* (1862) 19 Cal. 539, 541-542; *Matter of Salvator Troia* (1883) 64 Cal. 152, 153 [28 P. 231]; *Ex parte Curtis* (1891) 92 Cal. 188, 189 [28 P. 223]; *In re Page* (1927) 82 Cal.App. 576, 578 [255 P. 887].)

This was so notwithstanding the fact that since the amendments of 1873-1874, a defendant convicted of first degree murder might be sentenced to death or "confinement in the state prison for life, at the discretion of the court or jury . . . ." (§ 190 (1874); Amendments to the Codes, 1873-1874, ch. 508, § 1, p. 457; *In re Anderson* (1968) 69 Cal.2d 613, 621-622 [73 Cal.Rptr. 21, 447 P.2d 117].)[5]

2. *Invalidity of the death penalty did not preclude denial of bail for what formerly had been capital offenses.*

In *People* v. *Anderson* (1972) 6 Cal.3d 628 [100 Cal.Rptr. 152, 493 P.2d 880], the Supreme Court struck down the death penalty in this state as impermissibly cruel. *Anderson* addressed the bail status of individuals who no longer suffered exposure to the death penalty as a result of the *Anderson* ruling. (*Id.*, at p. 657, fn. 45.)

*Anderson* stated: "The issue of the right to bail in cases in which the law has heretofore provided for the death penalty has been raised for the first time by the People and amici curiae on petition for rehearing. Although this question was never an issue in this case, we deem it appropriate to note that [former] article I, section 6, of the California Constitution and [former] section 1270 of the Penal Code, dealing with the subject of bail, refer to a *category of offenses* for which the punishment of death could be imposed and bail should be denied under certain circumstances. The law thus determined the gravity of such offenses both for the purpose of fixing bail before trial and for imposing punishment after conviction. Those offenses, of course, remain the same but under the decision in this case punishment by death cannot constitutionally be exacted. *The underlying gravity of those offenses endures and the determination of their gravity for the purpose of bail continues unaffected by this decision.* Accordingly, to subserve such purpose and subject to our future consideration of this issue in an appropriate proceeding, we hold that they remain as offenses for which bail should be denied in

---

[5]Other than special circumstance murder, offenses which presently are punishable by death or life in prison without the possibility of parole include treason, procuring the execution of an innocent person, train wrecking which results in death, malicious assault by a life prisoner, and sabotage resulting in death or great bodily injury. (§§ 37, 128, 219, 4500; Mil. & Vet. Code, § 1672, subd. (a).)

conformity with [former] article I, section 6, of the Constitution and [former] Penal Code section 1270 when the proof of guilt is evident or the presumption thereof great." (*People* v. *Anderson, supra,* 6 Cal.3d at p. 657, fn. 45, italics added.)

3. *Enactment of the special circumstance death penalty law rendered the charge of murder without special circumstances a noncapital offense. Conversely, murder with special circumstances is a capital offense.*

In 1973, the Legislature enacted death penalty legislation that included special circumstances which, if charged and found true, automatically fixed the penalty for the underlying first degree murder at death. (*Sand* v. *Superior Court* (1983) 34 Cal.3d 567, 577 [194 Cal.Rptr. 480, 668 P.2d 787] (dis. ` opn. of Bird, C. J.).)

Thereafter, *In re Boyle* (1974) 11 Cal.3d 165 [113 Cal.Rptr. 99, 520 P.2d 723], addressed the availability of bail for an individual charged with murder but as to whom the People had not alleged special circumstances because the new death penalty legislation had not been in effect at the time of the alleged crime. *Boyle* stated: "In adopting the new statute the Legislature has, inter alia, again exercised its power to implement the bail provision of our Constitution by circumscribing the class of 'capital offenses' referred to therein. It follows that only persons accused of crimes in that class may now be denied bail pursuant to [former] Penal Code section 1270." (*Id.,* at p. 168.) Because Boyle's crimes had been committed before the enactment of the new death penalty legislation, his offenses were not punishable with death and he accordingly was entitled to reasonable bail.

*Boyle,* read together with *Anderson,* thus clearly indicates, for the purpose of bail, any case which statutorily is punishable by death falls into the "class of 'capital offenses'" for which bail may be denied where the facts are evident or the presumption is great. (*In re Boyle, supra,* 11 Cal.3d at p. 168.) Stated differently, an allegation of first degree murder, standing alone, no longer carried the death penalty and thus had become a bailable offense. However, the charge of murder with special circumstances was punishable with death and bail for that offense could be denied.

In 1977, the Legislature restructured the death penalty law so as to require the trier of fact, after a true finding on a special circumstance, to fix the penalty at death or life imprisonment without the possibility of parole. (Stats. 1977, ch. 316, §§ 4-11, pp. 1256-1260.) Although the death penalty no longer was automatic upon a true finding on an alleged special circumstance, murder with special circumstances remained punishable with death and thus was, and is, a capital offense.

The instant charge of murder with special circumstances therefore is analogous to the charge of first degree murder prior to the decision in *Anderson*. In both cases the accused may, but need not necessarily, suffer the death penalty. It is the statutory availability of the ultimate penalty which renders the crime charged a capital offense. Thus, regardless of whether the People in fact seek the death penalty in any given case, a defendant charged with special circumstance murder is not entitled to bail.

This proposition remained clear after *Anderson* and *Boyle*. *In re Freeman* (1980) 102 Cal.App.3d 838 [162 Cal.Rptr. 423], involved the same issue presented here. The People had agreed they would not seek the death penalty as to a defendant charged with special circumstance murder. *Freeman* rejected the accused's claim of entitlement to bail because "the absolute right to bail is conditioned on the gravity of the charge." (*Id.*, at p. 840.) Because the accused remained charged with special circumstance murder, which "embrace a capital offense," it fell within the exception to the absolute right to bail. (*Ibid.*)

4. *The definition of "capital case" employed in Sand v. Superior Court, supra, 34 Cal.3d 567, does not alter this conclusion.*

Bright contends *Sand* has clouded the clarity of the holding in *Freeman*. We disagree.

*Sand* addressed the application of section 987.9 (Stats. 1977, ch. 1048, § 2, p. 3179) which was enacted concurrently with the 1977 death penalty legislation (Stats. 1977, ch. 316, §§ 4-14, pp. 1256-1262). Section 987.9 provides, in part: "In the trial of a capital case . . . the indigent defendant, through . . . counsel, may request the court for funds for the specific payment of [ancillary defense services]."

*Sand* noted the term " 'capital case' " was ambiguous in that it could be used to mean the nature of the charges or the actual possibility of imposition of the death penalty. (*Sand* v. *Superior Court, supra,* 34 Cal.3d at p. 570.) Construing the phrase so as to effectuate the Legislature's intent, *Sand* concluded " 'capital case,' " as used in section 987.9, applies only where the defendant actually risks death. (34 Cal.3d at p. 571.)

In reaching this result, *Sand* relied heavily upon the fact the Legislature had conditioned the effectiveness of section 987.9 on the passage of the 1977 death penalty legislation. Based thereon, the high court found an intent to limit the payment of such costs to death penalty cases. "[B]ecause the ultimate purpose of the 1977 statute was to reinstate the death penalty, we

may reasonably conclude that its companion section 987.9 was intended to insure that in cases in which the defendant actually risks death he or she will be afforded such ancillary defense services as are necessary to a 'complete and full defense.' " (*Sand* v. *Superior Court, supra,* 34 Cal.3d at p. 571.) "By explicitly linking enactment of section 987.9 to passage of a statutory scheme denominated a 'death penalty law' the Legislature has expressed its intention that the defense services funding provision apply in those cases in which death remains a possible punishment. [Citation.]" (*Ibid.*)

Thus, where the People stipulate the death penalty will not be sought, the accused is not entitled to funds for ancillary defense services because the case is "no longer capital for purposes of section 987.9 funding." (*Sand* v. *Superior Court, supra,* 34 Cal.3d at p. 575.)

*Sand* stated its construction of " 'capital case' " for the purpose of section 987.9 did not necessarily apply to the definition of " 'capital case' " for purpose of pretrial bail. "Whatever the merits of the Court of Appeal's approach in *Freeman* of focusing exclusively on the offense charged rather than considering as well the potential punishment, the bail situation is distinguishable. . . . Whether the Legislature intended, . . . to deny bail to persons charged with 'capital offenses' but not in fact subject to the death penalty is not a question before us." (*Sand* v. *Superior Court, supra,* 34 Cal.3d at pp. 574-575.)

The issue unaddressed in *Sand* is presented here.

5. *The nature of the offense charged, not the punishment actually faced, controls the availability of bail.*

Accepting *Sands*'s finding the phrases "capital crime" (Cal. Const., art. I, § 12) and "offense punishable with death" (§ 1270.5) are ambiguous because either may refer to the nature of the charges *or* the actual punishment risked, we resolve the ambiguity according to two familiar rules. ■ One of the primary aids in the construction of an ambiguous constitutional or statutory provision is " 'consideration of the object to be accomplished.' [Citation.]" (*Mutual Life Ins. Co.* v. *City of Los Angeles* (1990) 50 Cal.3d 402, 407 [267 Cal.Rptr. 589, 787 P.2d 996].) Also, where a provision is susceptible of two alternative interpretations, the one that leads to the more reasonable result will be followed. (*Lungren* v. *Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].)

■ Respecting the object to be accomplished, it is well settled that the primary purpose of bail is to assure attendance at trial. (*In re Boyle, supra,* 11

Cal.3d at p. 169; *In re Underwood, supra,* 9 Cal.3d at p. 348.) Although a sentence of death is qualitatively different from any other penalty, the risk of flight is similarly high whether the accused faces death or the alternative punishment of life in prison without the possibility of parole.

Thus, consideration of the purpose of the law leads to the conclusion that all capital offenses must fall within the exception to the right to bail in order to assure the attendance of special-circumstance murder defendants at trial.

Regarding the reasonableness of the alternative interpretations, footnote 45 at 6 Cal.3d, page 657, of the *Anderson* opinion is instructive. Despite the People's decision not to seek the death penalty in a special-circumstance murder case, the underlying gravity of the offense endures and the determination of its gravity for the purpose of bail continues unaffected by the fact the accused may suffer only life in prison without the possibility of parole rather than death. Thus, it would be unreasonable to release an individual charged with special-circumstance murder on bail merely because the People had decided not to seek the death penalty.

These considerations compel the conclusion that the nature of the charge controls the availability of bail, not the punishment actually faced by the accused. Accordingly, a defendant charged with an offense which statutorily carries the death penalty is charged with a capital offense and may be denied bail where the facts are evident or the presumption is great.[6]

CONCLUSION

For the purpose of bail, the phrases "capital crime" and "offense punishable with death" include any offense which statutorily may be punished by death. Bail properly may be denied in such a case where the facts are evident or the presumption is great. Accordingly, the trial court correctly denied Bright's request for bail pending trial.

---

[6]At oral argument counsel for Bright pointed out Bright faces the same penalty as an individual charged with kidnapping for ransom where the victim suffers death or bodily harm, or is intentionally confined in a manner which exposes the victim to a substantial likelihood of death. That crime, which is a violation of section 209, subdivision (a), is punishable by life in state prison without the possibility of parole. An individual so charged is entitled to reasonable bail. Bright argues the offense with which he is charged and a violation of section 209, subdivision (a), both carry the same possible penalty and ought to be viewed similarly for the purpose of bail. We disagree.

The flaw in Bright's analogy is that a violation of section 209, subdivision (a), cannot be punished by death and thus is not a capital offense. Special-circumstance murder, on the other hand, is a capital offense for which bail may be denied under the relevant constitutional and statutory provisions. We note that where a violation of section 209, subdivision (a), is based upon the fact the victim suffered death during the commission of kidnapping, the accused alternatively might be subject to prosecution for special-circumstance murder pursuant to section 190.2, subdivision (a)(17)(ii), which is a capital offense.

## DISPOSITION

The alternative writ heretofore issued is discharged. The petition for writ of habeas corpus is denied.

Hinz, J., and Kitching, J., concurred.

A petition for a rehearing was denied March 31, 1993, and petitioner's application for review by the Supreme Court was denied May 27, 1993.