[No. G014164. Fourth Dist., Div. Three. Sept. 30, 1993.]

THOMAS FRANK MANISCALCO, Petitioner, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

Curt Livesay and Gigi Gordon for Petitioner.

No appearance for Respondent.

Michael R. Capizzi, District Attorney, and Gregg L. Prickett, Deputy District Attorney, for Real Party in Interest.

**OPINION**

**SILLS, P. J.—**

I

One of the recurrent problems revolving around capital punishment is whether certain benefits or liabilities extend to defendants who are charged with "capital" crimes but who nevertheless do not actually face the death penalty.[1] For example, the right to bail may depend on a defendant's *not* having been charged with a "capital crime," while the right to extra

---

[1]Much of the case law on the subject followed invalidation of certain death penalties by the United States Supreme Court in *Furman* v. *Georgia* (1972) 408 U.S. 238 [33 L.Ed.2d 346, 92 S.Ct. 2726]. (See generally, Annot., Effect of Abolition of Capital Punishment on Procedural

attorneys or investigators at taxpayers' expense may turn on whether he or she *has* been so charged.[2]

The federal courts have solved the problem by examining the underlying substance of the benefit or liability. Essentially, they ascertain the reason for the benefit or liability, and ask whether the reason applies in the case at hand.

The present case requires us to confront the same problem. The defendant has been charged with special circumstance murder—a charge which carries the possibility of a death penalty—but the prosecution has announced it will no longer seek the death penalty. The defendant sought bail, but the trial court denied the request because of the "capital" nature of the charge. In denying the request, the court relied on *In re Freeman* (1980) 102 Cal.App.3d 838 [162 Cal.Rptr. 423], which held, under functionally identical circumstances, that bail was precluded as long as the defendant was charged with a capital offense, even if he or she was not actually in jeopardy of the death penalty.

However, the court denied the request reluctantly, stating that it did not agree with *Freeman* and found the case "illogical" in the wake of our Supreme Court's decision in *Sand* v. *Superior Court* (1983) 34 Cal.3d 567 [194 Cal.Rptr. 480, 668 P.2d 787]. *Sand* had held that a defendant was not entitled to certain ancillary defense services which are otherwise available to those charged in "capital cases" because he was, like the defendant here, no longer actually facing the death penalty.

We believe the federal approach reflects the true state of California law as well. The core reason for denying bail to defendants charged with capital crimes relates directly to the gravity of the crime, and has no necessary

Rules Governing Crimes Punishable by Death—Post—Furman Decisions (1976) 71 A.L.R.3d 453.)

[2]In federal courts in particular there are a host of legal results which depend on the "concept of capital crime." (*United States* v. *Watson* (4th Cir. 1973) 496 F.2d 1125, 1127.) These not only include bail and extra attorneys or investigators, but extra time before statutes of limitation run, additional discovery, the right to probation, and the right to peremptory challenges. (*Ibid.*)

In California a number of penal statutes likewise turn on the concepts of "capital case" or "capital offense." (See, e.g., Pen. Code, §§ 987, subd. (b) [duty of court in capital case to tell in propria persona defendant at arraignment of right to be represented at public expense] 987, subd. (d) [duty of court in "capital case" to appoint second counsel upon first counsel's request when convinced such appointment is necessary for effective representation], 1240.1, subd. (e)(1) [duty of trial counsel in "capital case" to check entire appellate record for errors and omissions] 1538.5, subd. (k) [defendant entitled to release pending writ proceedings after successful motion to recover property or suppress evidence unless charged with "capital offense" where proof is evident or presumption great].)

relationship to the complexity of the defendant's "case." (See *People* v. *Anderson* (1972) 6 Cal.3d 628, 657, fn. 45 [100 Cal.Rptr. 152, 493 P.2d 880].) On the other hand, the reason for extra investigators and experts does bear directly on a defendant's "case." (See *Sand* v. *Superior Court, supra*, 34 Cal.3d 567.) Because the present case involves a request for bail, the defendant's petition must be denied.[3]

## II

This court set out most of the basic facts in the last installment of Thomas Maniscalco's saga. (See *Maniscalco* v. *Superior Court* (1991) 234 Cal.App.3d 846, 848-849 [285 Cal.Rptr. 795].) Briefly, Maniscalco was arrested over nine years ago and charged with three murders occurring in 1980. He has remained in custody without bail ever since.[4] Maniscalco's first trial, culminating in November 1990, resulted in a hung jury. In August 1992, after the penalty phase of the trial of Maniscalco's erstwhile codefendant ended with a hung jury, the prosecution stated on the record that it would no longer seek the death penalty against Maniscalco.

Maniscalco immediately felt certain consequences of the district attorney's decision not to seek the death penalty. The superior court promptly removed his cocounsel from the case, presumably reasoning that, under *Sand* v. *Superior Court, supra*, 34 Cal.3d 567, 575, Maniscalco was not entitled to "ancillary defense services" under Penal Code section 987.9 because his was no longer a "capital case."[5] Shortly thereafter, in February 1993, Maniscalco once again applied for bail, asserting three arguments: (1) under *Sand* his case was no longer "capital"; (2) proof of the alleged crime was no longer evident (or the presumption great) because of the hung jury in his first trial;

---

[3]The petition has also afforded members of this court an opportunity for further research and reflection on this area of the law, which we have previously addressed in what is now an unpublished opinion.

[4]There have been two prior bail hearings in this case. In 1984, Judge William Thomson denied bail because "proof was evident and the presumption great." We denied a subsequent petition for habeas corpus, as did the Supreme Court. In denying hearing, however, the Supreme Court in a brief order stated: "The denial is without prejudice to a renewed application to the trial court for bail on grounds that, as a matter of law, the evidence presented to the grand jury would be insufficient to sustain a conviction on appeal (*Ex parte Curtis* (1891) 92 Cal. 188 [28 P. 223]; *Ex parte Troia* (1883) 64 Cal. 152 [28 P. 231]; *Ex parte Wolff* (1880) 57 Cal. 94; *People* v. *Green* (1980) 27 Cal.3d 1, 55 [164 Cal.Rptr. 1, 609 P.2d 468]), or to a renewed application on that ground if the evidence presented at any future preliminary hearing is insufficient under that test." (Order, *In re Maniscalco* (May 2, 1985) G002288.) Later, Maniscalco reapplied for bail after his first trial resulted in a hung jury. That request was denied on November 13, 1990.

[5]The superior court reappointed associate counsel for certain motions in the case, including the bail motion, which is presumably the reason Maniscalco is represented by two attorneys in this proceeding.

and (3) being held for nine years without bail violated his due process rights under the Eighth and Fourteenth Amendments to the United States Constitution. The prosecution principally relied on *In re Freeman, supra,* 102 Cal.App.3d 838, which held that bail was precluded so long as a defendant was *charged* with a capital offense.

At a lengthy hearing, the superior court denied Maniscalco's motion to set bail. The court reluctantly concluded this was still a capital case for purposes of bail, stating: "[A]s much as I don't like it, as much as I don't agree with it, and I find it to be illogical based on subsequent decisions, I don't know how I get around following Freeman." Once the court made that ruling, Maniscalco's attorney stated she was not seeking a redetermination of whether the proof of the alleged crime was evident or the presumption was great.[6] Finally, the court stated, "I don't think that nine years, the nine years that Mr. Maniscalco has spent in jail based upon my knowledge of this case is a circumstance that I would find rises to the level of an Eighth Amendment violation."[7]

## III

Only three published California appellate decisions have thus far actively considered the right to bail in the context of a special circumstance murder charge with no actual exposure to the death penalty: *People* v. *Obie* (1974) 41 Cal.App.3d 744, 750 [116 Cal.Rptr. 283], disapproved on another point in *People* v. *Rollo* (1977) 20 Cal.3d 109, 120, footnote 4 [141 Cal.Rptr. 177, 569 P.2d 771]; *In re Freeman, supra,* 102 Cal.App.3d 838; and *In re Bright* (1993) 13 Cal.App.4th 1664, 1667-1672 [17 Cal.Rptr.2d 105]. Each case held that the nature of the charge meant that the defendant was not entitled to bail under section 12 (formerly section 6) of article I of the California Constitution ("A person shall be released on bail by sufficient sureties, except for capital crimes . . . .") even though there was no actual risk of a death penalty. However, after *Obie* and *Freeman* the Supreme Court handed down *Sand* v. *Superior Court, supra,* 34 Cal.3d 567, which, while it did not deal with bail, is superficially difficult to reconcile with *Obie, Freeman* and *Bright.* We first examine these four cases.

---

[6]The relevant portion of the transcript is as follows:

"[THE COURT:] I have now determined under *Freeman* that this is—capital rules will apply. [¶] If you now want to make a bail motion under capital rules, then I think I have to address the issue of whether the presumption is great. And I will do that if the defense wants me to address that. I don't think it is appropriate for the People to make your bail motion.

"Ms. GORDON: Okay. So that the record is clear, I am not making that motion at this time."

It should be noted that the superior court judge in this proceeding is the same judge who presided over Maniscalco's first trial; she was thus familiar with the evidence presented there.

[7]Maniscalco's own attorneys have played a large role in the "lassitude" with which the case has proceeded. (See generally *Maniscalco, supra,* 234 Cal.App.3d at pp. 849-851.)

*Obie* merely touched on the subject in two sentences, which can be quoted in full: "Defendant contends that his original counsel, chosen by him, failed in his duty to defendant in not requesting bail at the arraignment. By virtue of the charge against him defendant was not entitled to release on bail (Pen. Code, § 1270, Cal. Const., art. I, § 6 [now § 12]; *People* v. *Anderson* (1972) 6 Cal.3d 628, 657, fn. 45 [100 Cal.Rptr. 152, 493 P.2d 880])." (*Obie, supra,* 41 Cal.App.3d at p. 750.)

*Freeman* reasoned, without much more explanation, that murder with special circumstances "embrace[d] a capital offense" because "the absolute right to bail is conditioned on the gravity of the charge." (102 Cal.App.3d at p. 840.) Like *Obie, Freeman*'s authority was the text of footnote 45 in the case of *People* v. *Anderson, supra,* 6 Cal.3d 628. *Anderson* had invalidated the death penalty in California as it then stood. At the very end of the opinion, in footnote 45, the court addressed the problem of the "right to bail in cases in which the law has heretofore provided for the death penalty." The court "deem[ed] it appropriate to note" that the "underlying gravity" of the offenses providing for the death penalty survived the invalidation of the death penalty. In particular, the underlying gravity of those offenses "for the purpose of bail" continued "unaffected." (*Anderson, supra,* 6 Cal.3d at p. 657, fn. 45.) For the *Freeman* court, the remarks in *Anderson*'s footnote 45 were dispositive.[8]

In considering whether a defendant was involved in a "capital case" for purposes of a statute (Pen. Code, § 987.9) entitling a defendant to ancillary defense services, *Sand* made it quite clear that it was not addressing the problem of the exception for bail when the defendant is charged with a capital offense. (34 Cal.3d at pp. 574-575.) The "bail situation," the court declared, "is distinguishable." (*Id.* at p. 574.)

As far as the problem of ancillary services was concerned, *Sand* focused on the complexity of death penalty trials which are always bifurcated

---

[8]Interestingly, the *Anderson* footnote has been widely interpreted by courts on both sides of the issue as supporting the continued viability of a capital crimes exception to the right to bail even when there is no possibility of an actual death sentence. (Cf. *Jones* v. *Sheriff, Washoe County* (1973) 89 Nev. 175 [509 P.2d 824, 824] ["We adopt the California view" and affirm the denial of bail]; *People* ex rel. *Dunbar* v. *District Court* (1972) 179 Colo. 304 [500 P.2d 358, 359] ["Our Constitution has defined a class of crimes which permit the denial of bail. Murder is within that class of crimes. The same rationale has been expressed by the California Supreme Court in footnote 45 . . . ."]; *State* v. *Flood* (1972) 263 La. 700 [269 So.2d 212, 214-215, fn. 3] ["The Supreme Courts of Colorado and California have applied the 'classification' theory to uphold bail provisions similar to those of Louisiana after the application of the death penalty became unconstitutional in their jurisdictions."] with *Commonwealth* v. *Truesdale* (1972) 449 Pa. 325 [296 A.2d 829, 834, fn. 11] ["We are not persuaded by the views expressed in People v. Anderson . . . ."]; *State* v. *Johnson* (1972) 61 N.J. 351 [294 A.2d 245, 249-250, fn. 3] ["we cannot agree with the amendment to footnote 45 which the California Supreme Court added in People v. Anderson . . . ."].)

between a guilt phase and a penalty phase. Where the prosecution does not actually seek the death penalty, there is no need for the second phase. Because the provision for special funding of "capital cases" reflects the Legislature's perception of both the gravity of the penalty and the "difficulty of preparing for a murder trial," the absence of actual exposure to the death penalty undercuts one of the major purposes for the special funding statute. (See 34 Cal.3d at p. 575, and see generally pp. 573-575.)

The latest case is *Bright*, which, perhaps because it was decided after *Sand*, went into considerably more detail than *Obie* or *Freeman*. *Bright* reasoned that the purpose of bail was to assure attendance at trial, and that the risk of flight is "similarly high whether the accused faces death or the alternative punishment of life in prison without the possibility of parole." (*In re Bright, supra*, 13 Cal.App.4th at pp. 1671-1672.) *Bright* noted, as we have done, that *Sand* explicitly did not address the right to bail, and its rationale was tied to the existence of a penalty phase when the prosecution does seek the death penalty. (See 13 Cal.App.4th at pp. 1670-1671.)

It is tempting to conclude that "capital crime," as used in the California Constitution and construed in *Freeman* and *Bright*, really is the same thing as "capital case" in *Sand*, the only difference being a mere semantic quibble. But the temptation should be resisted. An examination of federal cases wrestling with the same "capital" problem reveals that there is a principled distinction between the concepts of capital case and capital crime.

## IV

Shortly after the United States struck down three death penalties in *Furman* v. *Georgia, supra*, 408 U.S. 238, federal courts faced the question of what to do with a whole series of statutes which are "predicated in their operative effect upon the concept of capital crime." These included, as here, exemptions from entitlement to bail. (See *Watson, supra*, 496 F.2d at p. 1127; see also 18 U.S.C. §§ 3146 & 3148.)[9] In 1973, *Watson*, out of the Fourth Circuit, confronted the question of whether a defendant convicted of first degree murder under the federal statute (18 U.S.C. § 1111), but nonetheless ineligible for the death penalty, was entitled to two attorneys under a

---

[9]State decisions in the wake of *Furman* are collected in the American Law Reports, Third Series annotation mentioned in footnote 1. Slightly more jurisdictions (Alabama, California, Colorado, Florida, Louisiana, Mississippi, Nevada, Oklahoma and Utah) than not (Arizona, Arkansas, Connecticut, New Jersey, Ohio, Pennsylvania and Texas) continued to deny bail even though no actual death penalty was possible. (See Annot., *supra*, 71 A.L.R.3d at pp. 471-478.) California was placed in the majority category because of *Obie, supra*, 41 Cal.App.3d 744, and its citation to footnote 45 in *Anderson, supra*, 6 Cal.3d at page 657. (See Annot., *supra*, 71 A.L.R.3d at p. 474.)

federal statute giving that right to anyone indicted for a "capital crime." (See 18 U.S.C. § 3005.)

The *Watson* court contrasted the exception to the right to bail with the right to two attorneys, essentially divining a line between case and crime. "[T]he bail classification relates primarily to the nature of the offense as it affects society and not to the nature of the risks or complexities facing the defendant at trial." (496 F.2d at p. 1127.) Because the type of crime for which Congress might ascribe the death penalty will "more likely than not," be a "complex and difficult case to prepare and try," the court in *Watson* could not say the imposition of the death penalty was the "sole reason" for the entitlement to two attorneys. The entitlement was therefore not "judicially repealed" by *Furman*. Because the statute was still in effect, the defendant was entitled to the two attorneys even if he was not actually exposed to the death penalty. (496 F.2d at p. 1128.)

The Ninth Circuit took up a problem similar to *Watson* in *United States* v. *Martinez* (9th Cir. 1976) 536 F.2d 886. *Martinez* involved the question of whether two defendants were entitled to twenty peremptory jury challenges, something afforded to those charged with offenses "punishable by death" under rule 24(b) of the Federal Rules of Criminal Procedure. The Ninth Circuit held that in light of the prosecution's stipulation not to seek the death penalty, the "proceedings" were "no longer capital cases" entitling the defendants to 20 peremptory challenges. (536 F.2d at p. 890.)

In *United States* v. *Kennedy* (9th Cir. 1980) 618 F.2d 557, 558, a case which did involve a bail request, the Ninth Circuit explicitly adopted the *Watson* approach of looking to the purpose of the underlying rule. In *Kennedy*, the defendant sought bail, and the trial court considered the application under criteria in a statute governing situations when defendants are charged with offenses "punishable by death." (See 618 F.2d at p. 557 and 18 U.S.C. § 3148.) The statute allowed the court to consider the dangerousness of the accused; in contrast, another statute (18 U.S.C. § 3146) did not contemplate consideration of the defendant's "potential dangerousness" where the offense was not punishable by death. (See 618 F.2d at p. 559.) The difference between the two statutes allowed the Ninth Circuit to conclude that Congress had intended to impose different bail conditions based on the nature of the offense, not the nature of the potential penalty. Dangerousness exists "regardless" of whether the death penalty is imposed. (See 618 F.2d at p. 559.)

In the process *Kennedy* retroactively recast *Martinez* as a "purpose" case. "In reaching our conclusion [in *Martinez*] that defendants did not have a

right to 20 peremptory challenges, we reasoned that the purpose of this rule was to assure that a jury was not tainted by opinions about capital punishment, 536 F.2d at 890, and that it therefore did not apply in cases in which capital punishment was no longer possible. In looking to the purpose underlying the rule, we engaged in the same kind of analysis as the Fourth Circuit undertook in *Watson* . . . ." (618 F.2d at p. 558.)[10]

Having recast *Martinez* in *Kennedy*, the Ninth Circuit then confronted, in *United States* v. *Dufur* (9th Cir. 1980) 648 F.2d 512, the very same problem *Watson* confronted—a defendant's entitlement to two attorneys when indicted for a capital crime when there is no possibility of a death sentence. After noting the Ninth Circuit's approval of the *Watson* "method of inquiry" (i.e., looking to the purpose of the rule), the court rejected the *Watson* result. "We agree with the Seventh Circuit that the purpose of the two-attorney right is 'to reduce the chance that an innocent defendant would be put to death because of inadvertence or errors of judgment of his counsel.' [Citation.] Since the statute's purpose, in our opinion, derives from the severity of the punishment rather than the nature of the offense, the elimination of the death penalty eliminates [the defendant's] right under 18 U.S.C. § 3005 to a second court—appointed attorney." (648 F.2d at p. 515.)

Bail came to the fore again in *United States* v. *Kostadinov* (2d Cir. 1983) 721 F.2d 411, which, like *Kennedy*, also explicitly adopted the *Watson* "purpose" approach. *Kostadinov* was an espionage case. The court thought it obvious that the exception to the entitlement to bail in capital cases "derive[d] from the nature of the offense . . . charged and not from the potential severity of the punishment." (721 F.2d at p. 412.) The "case" was therefore "capital" for purposes of determining whether the defendant was entitled to bail. (*Ibid.*)[11]

While the federal cases are not necessarily consistent in result (compare *Watson* with *Dufur*), they reflect a clear emphasis on underlying purpose.

---

[10]The preference in *Kennedy* for a *Watson* style of analysis appears all the stronger when one realizes that there is no reference at all to jurors' attitudes about capital punishment in *Martinez* (see particularly 536 F.2d at p. 890), nor is one even implicit in *Martinez*'s citation to *Loux* v. *United States* (9th Cir. 1968) 389 F.2d 911, 915, a kidnapping case. *Kennedy* was clearly looking beyond the actual text of *Martinez* to the fundamental reason for allowing peremptory challenges when a defendant might be put to death if found guilty.

[11]The Middle District of Florida also used the *Watson* approach in another espionage case, *United States* v. *Helmich* (M.D.Fla. 1981) 521 F.Supp. 1246, where the question was the applicability of an exception in a statute of limitations for "any offense, not capital." (See 521 F.Supp. at p. 1248; 18 U.S.C. §§ 3281 & 3282.) The court reasoned that the purpose of the exception was to provide an unlimited time to indict "very serious crimes." (521 F.Supp. at p. 1250.) Because charges of treason are "particularly grave" (it has been considered a capital crime since the first Congress), the exception applied, and the indictment was timely. (*Id.* at pp. 1249-1250.)

The five bail cases which we have reviewed (*Obie, Freeman, Bright, Kennedy* and *Kostadinov*) have articulated two purposes which might support the exception to the entitlement to bail which a defendant who had been charged with a noncapital crime would enjoy.

The first, of course, is the intensely serious nature of any crime which a state legislature or Congress would consider worthy of the death penalty in modern society. Ironically, as "contemporary standards of decency" arguably shrink the number of crimes so designated (cf. *People* v. *Anderson, supra,* 6 Cal.3d at pp. 645-648; but see *People* v. *Anderson, supra,* 6 Cal.3d at p. 658, fn. 3 (dis. opn. of McComb, J.) [zeal for abolition of death penalty reflects "sentimentalized hyperfastidiousness" seeking to expunge "all that appears harsh and suppressive"]), the seriousness of those remaining crimes becomes correspondingly graver. Poaching, for example, is no longer considered worthy of the death penalty. The crimes that still command the appellation "capital" are the really extreme ones.[12]

The second purpose, mentioned in *Bright,* is the prevention of flight. (13 Cal.App.4th at pp. 1671-1672, see also *In re Boyle, supra,* 11 Cal.3d 165, 169; *In re Underwood* (1973) 9 Cal.3d 345, 348 [107 Cal.Rptr. 401, 508 P.2d 721].) In regard to the second purpose, there are a number of crimes where the maximum sentence is life in prison without possibility of parole but which nevertheless still allow for the possibility of bail. (See *Bright, supra,* 13 Cal.App.4th at p. 1672, fn. 6.) This fact suggests that protection from flight cannot be the underlying reason for excepting capital crimes from the possibility of bail. We are left with the lugubrious nature of the crime itself. Some crimes are so horrifying that the defendant simply cannot be allowed bail for the protection of the public.

By contrast, the focus of *Sand* was on the complexity of the case, and the actual mechanics of "preparation" for guilt and penalty phases. In essence, the court questioned why a defendant should have the benefit of a statute

---

[12]It is important to distinguish between, on the one hand, *crimes* which are so extraordinarily grave that they are considered worthy of death, and, on the other, the absence of the possibility that a defendant may suffer the death penalty *regardless* of the crime he or she may be accused of. The former brings a defendant within the constitutional exception to the entitlement to bail, the latter does not. Thus in *In re Boyle* (1974) 11 Cal.3d 165, 168-169 [113 Cal.Rptr. 99, 520 P.2d 723] the court held that defendants were entitled to bail even though "special circumstances" had been alleged in connection with the murder charges brought against them because those special circumstances were insufficient to warrant the death penalty under the law as it stood at the time. In essence, *Boyle* dealt with a category of murder which was *not* so grave as to merit the death penalty.

designed for bifurcated trials when there was not going to be any bifurcated trial. (34 Cal.3d at p. 567.)[13]

The distinction between "capital crime" for purposes of bail, and "capital case" for purposes of *defending a case in court* is thus a principled one. It corresponds to the different purposes behind, on the one hand, an exception to the right to bail, and, on the other, the right to additional defense services in the face of a trial which will necessarily include a death penalty phase if the defendant is guilty.

## V

The petition for a writ of mandate is denied.

Moore, J., and Crosby, J., concurred.

---

[13]We acknowledge, of course, that responsibilities between counsel in death penalty cases are typically divided between trial and written work, not between the bifurcated guilt and penalty phases. *Sand* appears to have assumed that an additional phase of trial necessitated additional counsel.