[No. G014181. Fourth Dist., Div. Three. Nov. 30, 1993.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
KIRN YOUNG KIM, Real Party in Interest.

**COUNSEL**

Michael R. Capizzi, District Attorney, Maurice L. Evans, Chief Assistant District Attorney, John D. Conley, Assistant District Attorney, Richard King, Christopher J. Evans and Gregg L. Prickett, Deputy District Attorneys, for Petitioner.

No appearance for Respondent.

William J. Kopeny, under appointment by the Court of Appeal, Stokke & Riddet and Alan H. Stokke for Real Party in Interest.

**OPINION**

**SILLS, P. J.**—We are faced here with an interesting paradox. It is well established a capital offense is one which carries the maximum possible penalty of death. It is also well established a person under the age of 18 years cannot, by law, be punished with the death penalty. Petitioner asks us to hold that Kim—a minor—faces a capital offense because, although he cannot, by law, be punished with the death penalty, the offense with which he is charged carries that maximum penalty. Acknowledging the test for determining a capital offense is to focus on the maximum penalty, without regard to an individual defendant's actual penalty, we grant the request. Accordingly, we hold Kim is not entitled to the setting of bail, and reverse the trial court's order setting bail in his case.

FACTS

Real party in interest, Kirn Young Kim, was 16 at the time of the crime, found unfit to be treated as a juvenile, and was charged as an adult with murder and a special circumstance allegation of lying in wait. The trial court

conducted a bail hearing in which the transcript of the grand jury proceeding leading to the indictment in this case was read and considered. The court found "the facts are evident and the presumption is great [that Kim committed the offense],"[1] but also found the case was not a capital one because "the entire statutory scheme [including] Penal Code section 190.5 precludes the death penalty for a minor . . . ." Respondent court continued, however, to determine whether there was "a substantial likelihood that [Kim] would engage in great bodily harm to others" so as to deny bail under article I, section 12, subdivision (b) of the California Constitution. Finding the crime itself was "horrible[,] . . . as aggravated as a crime can be of a single victim," the court found Kim's role in the crime that of "a minor player." He was not present at the murder and did not participate in the actual beating and death. The court ruled Kim did not "present[] a substantial likelihood of danger to the community," and, thus, bail was not prohibited by the constitutional provisions. Bail was set at $750,000 with a condition that Kim and his parents surrender their passports.

Petitioner brought the matter to our attention in their original petition for alternative writ, which we denied without an explanation on April 29, 1993. (See *Omaha Indemnity Co.* v. *Superior Court* (1989) 209 Cal.App.3d 1266, 1271-1274 [258 Cal.Rptr. 66] [extraordinary writs should not be utilized as a means to second-guess trial courts or to unnecessarily delay and obstruct the process].) The Supreme Court granted the People's consequent petition for review on May 27, 1993, staying the order setting bail and transferring the matter to us with orders to vacate our previous denial and issue an alternative writ.

## DISCUSSION

■ The district attorney argues article I, section 12, subdivision (a) (see *ante*, fn. 1) and Penal Code section 1270.5[2] prohibit the setting of bail for Kim because he is charged with a special circumstance murder. The prosecution contends Kim is ineligible for bail, focusing on the maximum statutory penalty of death which the charge against him carries if he was not a

---

[1]Article I, section 12 of the California Constitution states, in pertinent part, "A person shall be released on bail by sufficient sureties, except for: [¶] (a) Capital crimes when the facts are evident or the presumption great; [¶] (b) Felony offenses involving acts of violence on another person when the facts are evident or the presumption great and the court finds based upon clear and convincing evidence that there is a substantial likelihood the person's release would result in great bodily harm to others; . . ."

[2]Penal Code section 1270.5 states, "A defendant charged with an offense punishable with death cannot be admitted to bail, when the proof of his or her guilt is evident or the presumption thereof great. The finding of an indictment does not add to the strength of the proof or the presumptions to be drawn therefrom."

juvenile. (See *In re Freeman* (1980) 102 Cal.App.3d 838, 840 [162 Cal.Rptr. 423].) In other words, "[i]t is the statutory availability of the [death] penalty which renders the crime charged a capital offense" (*In re Bright* (1993) 13 Cal.App.4th 1664, 1670 [17 Cal.Rptr.2d 105]), and special circumstance murder statutorily carries the availability of the death penalty.

Article I, section 12 of the California Constitution provides that bail is a constitutional right to all *except* a person charged with a capital crime if "the facts are evident or the presumption great." In a related statute, Penal Code section 1270.5 *prohibits* bail to a "defendant charged with an offense punishable with death . . . when proof of his or her guilt is evident or the presumption thereof great. . . ." Our task in the present proceeding is to decide if Kim is charged with a capital offense. If he is not, he has a constitutional right to bail.

As we stated in *Maniscalco* v. *Superior Court* (*People*) (1993) 19 Cal.App.4th 60, 61-62 [23 Cal.Rptr.2d 322], the right to bail depends on a defendant's *not* having been charged with a "capital crime."[3] Kim is unquestionably charged with a capital crime because he faces first degree murder with a special circumstance allegation. But he asserts the issue is not so easily resolved in his situation because he, personally, cannot *statutorily* receive that punishment.

The federal courts, when faced with an analogous predicament—when is a capital defendant a capital defendant for purposes of benefits and when is he one for purposes of liabilities—solved the problem by examining the underlying substance of the benefit or liability. Essentially, they ascertained the reason for the benefit or liability, and then inquired whether the reason applied in the particular case before the court. (*Maniscalco, supra*, 19 Cal.App.4th at p. 62.)

---

[3]Certain statutory rights and benefits, such as extra attorneys or investigators at taxpayers' expense, *may* turn on whether the charge is a capital one or if the defendant is a capital defendant. "In federal courts in particular there are a host of legal results which depend on the 'concept of capital crime.' (*United States* v. *Watson* (4th Cir. 1973) 496 F.2d 1125, 1127.) These not only include bail and extra attorneys or investigators, but extra time before statutes of limitation run, additional discovery, the right to probation, and the right to peremptory challenges. (*Ibid.*)" (*Maniscalco, supra*, 19 Cal.App.4th at p. 62, fn. 2.)

In California there are also a number of possible statutory benefits or liabilities which flow from being charged with a "capital offense." (See, e.g., Pen. Code, § 987, subd. (b) [duty of court in capital case to tell unrepresented defendant at arraignment of right to have counsel at public expense]; § 987, subd. (d) [duty of court in "capital case" to appoint second counsel upon first counsel's request when convinced such appointment is necessary for effective representation]; § 1240.1, subd. (e)(1) [duty of trial counsel in "capital case" to check entire appellate record for errors and omissions]; § 1538.5, subd. (k) [defendant entitled to release pending writ proceedings after successful motion to recover property or suppress evidence unless charged with "capital offense" where proof is evident or presumption great].)

The present case requires us to confront a similar problem. Kim is charged with special circumstance murder—a charge which carries the possibility of a death penalty—but he, *individually*, cannot by law receive that punishment. Kim requested bail, and bail was set, over the objection of the prosecution primarily because of the statutory prohibition against the death penalty's application to anyone of Kim's age.

The court attempted to harmonize three, apparently conflicting, legal provisions in its order. First, there was *Sand* v. *Superior Court* (1983) 34 Cal.3d 567 [194 Cal.Rptr. 480, 668 P.2d 787], which held Sand was not entitled to certain ancillary benefits available to "capital defendants" because the prosecution was no longer requesting the death penalty in his specific case. On the other hand, *In re Freeman, supra*, 102 Cal.App.3d 838 and *In re Bright, supra*, 13 Cal.App.4th 1664[4] each held that the maximum possible penalty on the actual charge—irrespective of the status of the defendant— was the determining factor in ascertaining a "capital crime" for entitlement to bail under California Constitution article I, section 12. (See fn. 1, *ante*). Finally, Penal Code section 190.5, subdivisions (a) and (b)[5] prohibit anyone between the ages of 16 and 18 receiving the death penalty. The trial court emphasized the *Freeman* rationale pivoted on whether the offense carried the possibility of the death penalty *by law*. It then noted that Kim, *by law*, could not receive the death penalty. Thus, the *Freeman* and *Bright* analysis was distinguishable from Kim's situation, and the court applied the rationale of *Sand* as the only alternative which was, in the trial court's opinion, consistent with the legislative scheme behind Penal Code section 190.5. Sand was charged with special circumstance murder, but had received a promise from the prosecution that it would not pursue the death penalty. He also wanted certain statutory benefits accorded to only capital defendants. But this reduction in the penalty facing him was important; the problem of ancillary services required a focus on the complexity of a trial with an actual death penalty possibility as compared to one which included only the guilt phase. (See *Sand, supra*, 34 Cal.3d at pp. 573-575.) Therefore, without the actual

---

[4]See also *People* v. *Obie* (1974) 41 Cal.App.3d 744, 750 [116 Cal.Rptr. 283] (disapproved on other grounds in *People* v. *Rollo* (1977) 20 Cal.3d 109, 120, fn. 4 [141 Cal.Rptr. 177, 569 P.2d 771]), which effectively ruled the same way as did the *Freeman* court, but without benefit of any discussion whatsoever.

[5]Penal Code section 190.5, in pertinent part, states: "(a) Notwithstanding any other provision of law, the death penalty shall not be imposed upon any person who is under the age of 18 at the time of the commission of the crime. The burden of proof as to the age of such person shall be upon the defendant. [¶] (b) The penalty for a defendant found guilty of murder in the first degree, in any case in which one or more special circumstances enumerated in Section 190.2 or 190.25 has been found to be true under Section 190.4, who was 16 years of age or older and under the age of 18 years at the time of the commission of the crime, shall be confinement in the state prison for life without the possibility of parole or, at the discretion of the court, 25 years to life. . . ."

potential of the death penalty, Sand did not qualify for the special privileges —and their incumbent special funding—of Penal Code section 987.9.[6]

As we stated in *Maniscalco*, the federal approach to questions involving capital cases "reflects the true state of California law as well. The core reason for denying bail to defendants charged with capital crimes relates directly to the gravity of the crime, and has no necessary relationship to the complexity of the defendant's 'case.' (See *People* v. *Anderson* (1972) 6 Cal.3d 628, 657, fn. 45 [100 Cal.Rptr. 152, 493 P.2d 880].) On the other hand, the reason for extra investigators and experts does bear directly on [the complexity of] a defendant's 'case.' (See *Sand* v. *Superior Court, supra,* 34 Cal.3d 567.)" (*Maniscalco, supra,* 19 Cal.App.4th at pp. 62-63.) Moreover, *Sand* explicitly rejected its application to the right to bail. (*Sand, supra,* 34 Cal.3d at p. 574.)

We once again narrow our attention to the differences between a "capital crime or offense" and a "capital case." As the federal cases wrestling with the same difficult problem have found, there is "a principled distinction between the concepts of capital case and capital crime." (*Maniscalco, supra,* 19 Cal.App.4th at p. 66.) Capital crimes, *by definition,* are of a most "intensely serious nature . . . ." (*Id.* at p. 69.) That seriousness *alone* is the deciding factor between capital crimes and all others. (*Ibid.*) "Some crimes are so horrifying that the defendant simply cannot be allowed bail for the protection of the public. [¶] By contrast, the focus of *Sand* was on the complexity of the case, and the actual mechanics of 'preparation' for guilt and penalty phases. In essence, the [*Sand*] court questioned why a defendant should have the benefit of a statute designed for bifurcated trials when there was not going to be any bifurcated trial. [Citation.]" (*Id.* at pp. 69-70.)

Kim is charged with a capital offense; he is not entitled to bail under Constitution article I, section 12. We hold the test applied in *In re Boyle* (1974) 11 Cal.3d 165, 168-169 [113 Cal.Rptr. 99, 520 P.2d 723] to be quite pertinent here: when the Penal Code defines capital offenses to include certain charges, and the defendant is not charged with one of them, he is entitled to the setting of bail. (*Id.* at p. 168.) But if the crime is one listed in the Penal Code as a capital offense, he is not. Kim is not, even though the Legislature, *in another statute,* has focused on individual defendants and exempted them from the actuality of the death penalty. The test for bail is, and continues to be, the gravity of the offense itself, not the individual characteristics of the specific defendant. Any other ruling would result in the unacceptable anomaly that other persons of his age who committed *less*

---

[6]Penal Code section 987.9 provides for the payment of investigators and experts in the trial "of a capital case" involving an indigent defendant.

egregious offenses—i.e., nonviolent crimes (see Welf. & Inst. Code, § 707, subd. (b))—would *not* be entitled to bail, yet *he* would. (Cf. *Schall* v. *Martin* (1984) 467 U.S. 253, 265-275 [81 L.Ed.2d 207, 217-224, 104 S.Ct. 2403]; *In re Talbott* (1988) 206 Cal.App.3d 1290, 1293 [254 Cal.Rptr. 421].) Essentially, we would be rewarding young people for committing the most heinous of crimes. As a public policy, we want to dissuade our youths from crime, not reward them for the sophistication and savagery with which they can commit it.

The stay is lifted and the alternative writ is discharged. Let a peremptory writ of mandate issue, directing respondent superior court to vacate its order setting bail and enter a new and different order denying bail.

Wallin, J., and Crosby, J., concurred.